IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TELECONFERENCE SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-200 (JBS) |
| | ) | |
| PROCTER & GAMBLE | ) | |
| PHARMACEUTICALS, INC., HSBC USA, | ) | |
| INC., BAXTER HEALTHCARE | ) | |
| CORPORATION, APPLIED MATERIALS, | ) | |
| INC., WACHOVIA CORPORATION, | ) | |
| STAPLES, INC. CABELA'S | ) | |
| INCORPORATED and ENBRIDGE | ) | |
| HOLDINGS (U.S.), L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**CISCO SYSTEMS, INC.'S OPENING BRIEF
IN SUPPORT OF MOTION TO INTERVENE AND TO STAY CASE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 N. Market St.
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Sonal N. Mehta
Rip Finst
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

April 17, 2009

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

II.   SUMMARY OF ARGUMENT ....................................................................... 1

III.  STATEMENT OF THE FACTS ..................................................................... 3

IV.   CISCO SHOULD BE PERMITTED TO INTERVENE TO PROTECT ITS
      PRODUCT AND ITS CUSTOMERS FROM TS'S MERITLESS
      INFRINGEMENT CLAIMS ........................................................................... 3

      A.    Cisco Should Be Permitted to Intervene As of Right ........................... 4

            1.    Cisco's Motion To Intervene Is Timely .................................... 4

            2.    Cisco Has A Compelling Interest In This Litigation And Its Stay ........... 4

            3.    Cisco's Legal And Economic Interests Are Impacted By This
                  Action ...................................................................................... 6

            4.    Cisco's Interests Are Not Adequately Represented By The Existing
                  Parties ..................................................................................... 7

      B.    At A Minimum, The Court Should Grant Cisco's Request For Permissive
            Intervention ...................................................................................... 9

V.    THIS CASE SHOULD BE STAYED PENDING ADJUDICATION OF CISCO'S
      DECLARATORY JUDGMENT ACTION ...................................................... 10

      A.    Courts Regularly Stay Customer Suits To Allow Resolution Of A
            Manufacturer's Declaratory Judgment Action ..................................... 10

      B.    Cisco's Declaratory Judgment Case Is The Right Case For Adjudication of
            TS's Claims Against Cisco's TelePresence Products .......................... 13

            1.    Staying This Case Until The Northern District Action Is Resolved
                  Will Streamline This Case And A Trial .................................... 13

                  a.    The Outcome Of The Northern District Action Involving
                        Cisco Will Simplify – If Not Eliminate – The Pending
                        Claims ........................................................................ 13

                  b.    The Northern District Of California Is The More
                        Appropriate Forum For Adjudication Of This Dispute .............. 14

            2.    A Stay Will Not Unduly Prejudice Plaintiff ............................. 17

            3.    A Stay Is Warranted Because This Case Is In Its Infancy ........ 18

VI.   CONCLUSION .......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Arrow Committee Laboratories, Inc. v. John Mezzalingua Associate, Inc.*,
    2005 WL 2786691 (D.Del. Oct. 26, 2005) ........................................................16

*Brothers, Inc. v. W. E. Grace Manufacturing Co.*,
    261 F.2d 428 (5th Cir. 1958) .......................................................................3

*Codex Corp. v. Milgo Electronics Corp.*,
    553 F.2d 735 (1st Cir. 1977)........................................................................11

*Cognex Corp. v. National Instruments Corp.*,
    2001 WL 34368283 (D.Del. June 29, 2001).......................................................18

*Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*,
    2004 WL 1554382 (D.Del. May 13, 2004)...........................................8, 12, 14

*Delphi Corp. v. Automotive Technology International, Inc.*,
    2008 WL 2941116 (E.D. Mich. Jul. 25, 2008) .........................................passim

*Deutschman v. Beneficial Corp.*,
    132 F.R.D. 359 (D. Del. 1990) .....................................................................9

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed.Cir. 1993).......................................................................11

*HBB Ltd. Partnership v. Ford Motor Co.*,
    1992 WL 348870 (N.D. Ill. 1992) ...............................................................10

*Honeywell International Inc. v. Audiovox Committees Corp.*,
    2005 WL 2465898 (D.Del. May 18, 2005)...............................................passim

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990).............................................................passim

*Kleissler v. U.S. Forest Service*,
    157 F.3d 964 (3rd Cir. 1998) ................................................................4, 7, 8

*Micron Technology, Inc. v. Mosaid Technology, Inc.*,
    518 F.3d 897 (Fed. Cir. 2008)......................................................................16

*Monolithic Power System, Inc. v. O2 Micro International Ltd.*,
    2008 WL 3266647 (N.D. Cal. Aug. 6, 2008) ....................................................6

TABLE OF AUTHORITIES
(continued)

Page(s)

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
   279 F. Supp. 2d 554 (D.Del. 2003)..........................................................................12, 14

*St. Clair Intellectual Prop. Consultants, Inc. v. Mirage System, Inc.*,
   419 F. Supp. 2d 620 (D.Del. 2006) ...............................................................................17

*Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*,
   882 F. Supp. 359 (D.Del. 1994)......................................................................................11

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Service*,
   853 F. Supp. 800 (D.Del. 1994), *rev'd on other grounds*, *UPS Worldwide
   Forwarding, Inc. v. U.S. Postal Service*, 66 F.3d 621 (3rd Cir. 1995) .........................9, 10

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*,
   505 F. Supp. 2d 561 (E.D. Wisc. 2007)........................................................................3, 6

*William Gluckin & Co. v. International Playtex Corp.*,
   407 F.2d 177 (2nd Cir. 1969).............................................................................. 11-12, 16

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)..........................................................................................................11

**FEDERAL STATUTES**

Fed. R. Civ. P. 24....................................................................................................................4, 9

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit brought by Plaintiff Teleconference Systems, LLC ("TS"). TS is one of the litigation enforcement arms of the California-based patent licensing and enforcement conglomerate, Acacia Research Corporation ("Acacia"), whose business is the monetization of patents through enforcement and litigation. Here, TS alleges that Cisco Systems, Inc.'s ("Cisco") TelePresence products infringe U.S. Patent No. 6,980,526 ("the '526 patent"). Although the subject of the suit is Cisco's TelePresence products, TS elected to file this "customer suit" in this Court against eight different Cisco customers,[1] rather than bringing suit against Cisco itself.

When Cisco learned of the suit and received indemnity requests from its customers, it promptly brought a declaratory judgment action against TS in the Northern District of California. TS alleges that it is the exclusive licensee of the patent. Cisco also included as a defendant Margalla Communications, Inc. ("Margalla"), which is the California company that apparently owns the patent according to Patent Office records. Cisco's declaratory judgment suit seeks to remove the shadow cast by TS's infringement allegation over Cisco's TelePresence product line, including its customers' use of those products.

Cisco has moved to intervene for purposes of seeking to stay this customer suit in favor of its declaratory judgment suit.

## II.    SUMMARY OF ARGUMENT

Cisco's TelePresence product is the target of this case. Despite this, TS made a considered and calculated decision not to include Cisco in this lawsuit, but instead to include

---

[1] The defendants are the following eight Cisco customers: Procter & Gamble Pharmaceuticals, Inc., HSBC USA, Inc., Baxter Healthcare Corporation, Applied Materials, Inc., Wachovia Corporation, Staples, Inc., Cabela's Incorporated, and Enbridge Holdings (U.S.), L.L.C. (collectively "Customers").

eight of its customers.  This approach has been used by some entities such as Acacia, whose business is patent enforcement, to increase litigation leverage by creating a big, cumbersome case against customers while excluding from the list of defendants the company with the most interest in the accused product and knowledge of the technology.

In such situations, "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (internal citation omitted).  Accordingly, where a company like Cisco seeks to protect its products and customers from what it believes are wrongful allegations of infringement, and does so promptly, the law affords it the procedural vehicle to do just that.

Here, Cisco has filed a declaratory judgment action to establish that Cisco's TelePresence products do not infringe the '526 patent and that the patent is invalid.  As a matter of sensible, efficient and fair case management, this customer suit should be stayed in favor of Cisco's declaratory judgment suit.

Cisco is the most natural challenger to the '526 patent.  Cisco is the party with the most knowledge and information about the TelePresence products, the party with the greatest interest in those products, and the party best situated to defend against TS's allegations.  Cisco also brought its declaratory judgment action in the most sensible location.  The Northern District of California is the district where the TelePresence products were developed, the district where information about the products is located, and the district where Cisco resides.  Indeed, the Northern District of California is the district where the named inventors reside, the district where Margalla, the apparent owner and purported licensor of the patent resides, and the district where Acacia and TS have directed their activities with respect to the '526 patent and more generally.

2

In short, the California declaratory judgment action is the most appropriate case for resolving this patent suit regarding Cisco's TelePresence products.  *Id.* (acknowledging a preference for a manufacturer's declaratory judgment action over a customer suit based on the recognition that, in reality, the manufacturer is the true defendant in the customer suit); *see also, e.g., Bros. Inc. v. W. E. Grace Mfg. Co.*, 261 F.2d 428, 430 (5th Cir. 1958); *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F.Supp.2d 561, 566 (E.D. Wisc. 2007) ("A favorable declaratory judgment would provide WS [the manufacturer] relief, for it would clear the air as to whether WS's game pieces infringe the '062 patent.  Without such clarification, Global [the patentee] remains free to 'attempt[] extra-judicial patent enforcement with scare-the customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.'"); *Delphi Corp. v. Automotive Tech. Int'l, Inc.*, 2008 WL 2941116, *5 (E.D. Mich. Jul. 25, 2008) ("[S]ignificant policy considerations favor global resolution of ATI's dispute with the actual source of the allegedly infringing products.").

This case should be stayed and Cisco's case should go forward.

## III.    STATEMENT OF THE FACTS

The pertinent facts are set forth in the Argument sections, as appropriate.

## IV.    CISCO SHOULD BE PERMITTED TO INTERVENE TO PROTECT ITS PRODUCT AND ITS CUSTOMERS FROM TS'S MERITLESS INFRINGEMENT CLAIMS

As discussed above, Cisco is the developer, manufacturer and seller of the TelePresence product line that is accused of infringing the '526 patent.  Despite this, Cisco was not named as a defendant in this case.  Cisco has moved to intervene as of right and by permission, to seek to stay this case and protect its interest in the TelePresence product line and to protect its customers from TS's unmeritorious claims.  *See* Fed. R. Civ. P. 24(a)(2); Fed. R. Civ. P. 24(b)(1).

## A.    Cisco Should Be Permitted to Intervene As of Right

The Third Circuit has "interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3rd Cir. 1998).  As set forth below, each of these factors demonstrates that Cisco has a right to intervene under Fed. R. Civ. P. 24(a).

### 1.    Cisco's Motion To Intervene Is Timely

Cisco's motion is timely.  TS filed its complaint on March 27, 2009, just three weeks ago.  Twelve days later, after learning of TS's lawsuit, investigating the matter, and receiving requests for indemnification from its customers, Cisco filed its complaint for declaratory judgment in the Northern District of California.  Exh. 1 [Cisco's DJ Complaint]. None of the defendants have responded to the complaint, no scheduling conference has taken place, no discovery has occurred, and no trial date has been set.  Therefore, Cisco's intervention will not delay this case or prejudice any of the parties.  *E.g.*, *Honeywell Int'l Inc. v. Audiovox Comms. Corp.*, 2005 WL 2465898, at *4 (D.Del. May 18, 2005) (finding motion to intervene timely because "discovery has not even begun in the case and case management issues are only now being addressed").  To the contrary, Cisco's prompt motion to intervene is likely to streamline these proceedings and *minimize* prejudice to the parties, as set forth below.

### 2.    Cisco Has A Compelling Interest In This Litigation And Its Stay

In patent infringement actions, the manufacturer of an accused product is routinely recognized as being the "real party in interest."  *Katz*, 909 F.2d at 1464 ("in reality, the manufacturer is the true defendant in the customer suit").  As the manufacturer and seller of the

4

accused TelePresence products at the heart of this case, there is no question that Cisco has a compelling interest in its adjudication and outcome. *See, e.g., Honeywell*, 2005 WL 2465898, at *4 (finding a "manufacturer of the product component which is at the heart of these cases ... has a compelling interest"). Not only would any adverse findings concerning Cisco's TelePresence product negatively impact Cisco's sales of the TelePresence products to the Customers in this suit, but it would adversely impact Cisco's sales of the TelePresence products more generally. Indeed, just the pendency of this action has significant impact on Cisco's interests. The mere fact of TS's claims creates an undue specter over Cisco's products—it is common sense that customers will think twice before purchasing products that are the subject of infringement allegations, especially where those allegations have exposed other customers to a customer suit. Thus, Cisco's interest lies in protecting its current and future customers from TS's allegations and from clearing the cloud that hangs over its TelePresence product line.

This interest alone would be sufficient to support Cisco's intervention in the present case. But Cisco's interest goes further. Cisco has an immediate financial stake in this litigation and in its stay. Customers have sought indemnification from Cisco in relation to this lawsuit. Declaration of Mark Michels in Support of Cisco Systems, Inc.'s Motion to Intervene and to Stay Case at ¶ 2-3. These requests implicate legal fees for the defense against TS's claims, and if the TelePresence products were found to infringe the '526 patent, potentially any judgment against them. They thus create a direct and near-term economic interest in this litigation. *See, e.g., WS Packaging*, 505 F.Supp.2d at 566 (finding manufacturer had a legal interest in case brought against its customers where the manufacturer owes an obligation of indemnity, for example, by indemnification contract or product warranty, to the customer); *see also Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2008 WL 3266647, at *3 (N.D. Cal. Aug.

6, 2008) (finding declaratory judgment jurisdiction existed where the manufacturer's legal interests would be harmed by, among other things, "be[ing] forced to indemnify its customers for any losses they incur in an infringement suit brought against them by" the patentee).

### 3.    Cisco's Legal And Economic Interests Are Impacted By This Action

For many of the same reasons, Cisco "can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known." *Honeywell*, 2005 WL 2465898, at *4. Indeed, the fact that TS has chosen to target its infringement claims against Cisco's TelePresence products makes it inevitable that Cisco's legal and economic interests will be impacted by TS's claims.

Beyond the interests identified above, the possibility of adverse findings absent a stay poses a serious threat to Cisco's legal and economic interests.  TS's complaint alleges that it is entitled to money damages and sweeping injunctive relief against the Customers and practically anyone associated with them, including "the impounding and destruction" of the Customers' TelePresence products and the cessation of all activities relating to Cisco's TelePresence products. D.I. 1, Complaint at ¶ 7.  Were TS to prevail and be awarded damages or injunctive relief, that relief would affect Cisco by curtailing future sales of its TelePresence products.  Indeed, as explained above, the mere fact of TS's infringement allegations and request for an injunction casts a shadow over Cisco's product line and prejudices Cisco.  Absent intervention and stay, Cisco's interest in removing that shadow from its product line through its declaratory judgment action will be compromised.

4.    **Cisco's Interests Are Not Adequately Represented By The Existing Parties**

With respect to the final factor, the law is clear that a party seeking to intervene as of right need not show that the existing parties will necessarily provide inadequate representation of the intervening party's interests, but rather that there is a real possibility that the representation will not be adequate. *See Kleissler*, 157 F.3d at 974 (noting that an intervenor need only show that representation may be inadequate, not that it is, in fact, inadequate). Here, there is little question that Cisco's interests may not be adequately represented by the eight Customers in the present suit, and that its interests will be most adequately protected if this case is stayed in favor of the declaratory judgment suit.

At the outset, Cisco is uniquely situated to defend its product line against TS's infringement claim. As the sole developer and manufacturer of the accused product line, Cisco has the deepest and most expansive understanding of the technology and functionality of the TelePresence products. Cisco also possesses the most relevant information about the structure and operation of the TelePresence products, including relevant documents and the individuals who designed and developed the products.

In contrast, the Customers did not design, develop or manufacture the accused products and lack the same understanding of how the TelePresence products work. *See* Declaration of Charles Stucki in Support of Cisco Systems, Inc.'s Motion to Intervene and to Stay Case ("Stucki Decl.") at ¶ 3. This lack of understanding and information may leave them unable to fully defend the TelePresence products against TS's infringement claims if this case were to go forward. For that reason, Courts have recognized that the information imbalance between manufacturer and customer is sufficient to create a potential for inadequate

representation that warrants intervention.[2] *See, e.g., Kleissler*, 157 F.3d at 974 (explaining that intervention is favored where "[t]he early presence of intervenors may serve to prevent errors from creeping into the proceedings [and] clarify some issues."); *Honeywell.*, 2005 WL 2465898, at *4 (finding that "because [the manufacturer] is uniquely situated to understand and defend its own products, its interests are not adequately represented by existing parties [the customers] to the litigation"); *Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*, 2004 WL 1554382, at *3 (D.Del. May 13, 2004) ("Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of [the patentee's] asserted patents."); *Delphi*, 2008 WL 2941116, at *5 (noting that the manufacturer "controlled the design and production and therefore is in the best position to defend its own products").

These inadequacies are heightened by the different venues of the two suits. Although TS brought suit in a district with very limited connection to the parties' dispute, Cisco's declaratory judgment action is based in the district with the greatest connection to and greatest interest in that dispute. As such, absent intervention and stay, the claims against Cisco's TelePresence products will be adjudicated against the wrong defendants and in the wrong venue.

*  *  *

In sum, Cisco's TelePresence products rest at the very heart of this litigation. The principles governing intervention as of right weigh heavily in favor of allowing Cisco to intervene in this case to seek a stay to protect its own interests in its product line and defend its customers against claims directed to that product line.

---

[2]    Beyond this, there is of course a risk that the Customers may not be able to mount non-infringement and patent invalidity defenses or arguments to the full extent Cisco will be able to in its declaratory judgment case. There may be theories or facts that are unique to Cisco as the manufacturer that could not be raised in an action where Cisco is not a party.

**B.    At A Minimum, The Court Should Grant Cisco's Request For Permissive Intervention**

Even if the Court finds Cisco is not entitled to intervene as of right, Cisco meets the requirements for permissive intervention.  A party may permissively intervene pursuant to Fed.R.Civ.P. 24(b) if: (1) the application is timely; (2) the applicant's claim and the main action have a question of law or fact in common; and (3) the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.  *E.g.*, *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 382 (D. Del. 1990).  For the same reasons as above, each of these criteria is met here.

There is no question that Cisco's motion is timely and that Cisco's intervention at this stage will not unduly delay or prejudice the adjudication of the rights of the original parties. Cisco has filed its motion at the very outset of this case, even before the defendants have responded to TS's complaint.  *UPS Worldwide Forwarding, Inc. v. U.S. Postal Service*, 853 F.Supp. 800, 807 (D.Del. 1994), *rev'd on other grounds*, *UPS Worldwide Forwarding, Inc. v. U.S. Postal Service*, 66 F.3d 621 (3rd Cir. 1995) (finding motion to intervene imposed no prejudice on the parties where "filed less than three months after the suit was initiated").  In addition, as discussed above, this case and Cisco's declaratory judgment action share common questions of law and fact.  TS alleges that each of the defendants infringes the '526 patent by "making, using, importing, offering for sale and/or selling ... a product in the Cisco TelePresence product line."  D.I. 1, Complaint at ¶¶ 19-26.  Cisco vigorously disputes that those products infringe the '526 patent and that the '526 patent is valid, and intends to establish non-infringement and invalidity in its declaratory judgment suit.  Therefore, Cisco has "a legal interest which is clearly related, if not identical, to the main action."  *UPS Worldwide.*, 853 F.Supp. at 807.

Under these circumstances, "[p]ermitting the intervention by a manufacturer in a patent infringement case against its customers is well supported by case law" and in fact. *HBB Ltd. Partnership v. Ford Motor Co.*, 1992 WL 348870, at *2 (N.D. Ill. 1992). For each of these reasons, the Court should grant Cisco's motion to intervene in this matter for purposes of seeking stay.[3]

## V.    THIS CASE SHOULD BE STAYED PENDING ADJUDICATION OF CISCO'S DECLARATORY JUDGMENT ACTION

Cisco seeks a stay of this action to protect its TelePresence product and its customers from unmeritorious claims and to remove the shadow that those claims have cast over its products. As set forth below, numerous pragmatic and equitable reasons justify a stay of this customer suit pending resolution of Cisco's declaratory judgment action.

### A.    Courts Regularly Stay Customer Suits To Allow Resolution Of A Manufacturer's Declaratory Judgment Action

In general, "[w]hen considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Honeywell*, 2005 WL 2465898, at *2.

These factors have routinely been found to support a stay, even where the first-filed action is stayed in favor of allowing a second-filed action to proceed. In making that determination, Courts have rejected a rigid rule in favor of a flexible approach. *See also Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F.Supp. 359, 364 (D.Del. 1994) ("District courts have always had discretion given appropriate circumstances justifying departure from the

---

[3]    For the same reasons, if Cisco's motion to stay were to be denied, Cisco requests that this Court treat this motion as one for purposes of intervention in the case more broadly.

first filed rule."); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed.Cir. 1993), *abrogated on diff. grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ("Exceptions [to the first-to-file doctrine] are not rare, and are made when justice or expediency requires, as in any issue of choice of forum."). Applying this flexible approach, the central question is whether, under the circumstances of a particular case, it makes more sense—for the parties and the judicial system—for the second-filed action to go forward ahead of the first-filed action.

Courts often find a stay of the first-filed action to be appropriate where that action is a customer suit and where the second-filed action is an action involving the manufacturer. For example, in *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2nd Cir. 1969), the Second Circuit affirmed the trial court's stay of a first-filed customer suit. Although the first suit generally takes priority over a later-filed case, the showing of balance of convenience in favor of the second action or "special circumstances" can justify giving priority to the second-filed case. *Id.* at 178. The Court recognized one such "special circumstance" as that of a "'customer action' where the first-filed suit is against a customer of the alleged infringer while the second suit involves the infringer himself." *Id.*

Applying the same logic, in *Katz*, 909 F.2d at 1464, the Federal Circuit affirmed a district court's order enjoining a customer suit pending resolution of an infringement suit against the manufacturer. Underlying the Court's ruling was its recognition that litigation against or brought by the manufacturer takes precedence over a suit by the patent owner against customers. Citing *Codex Corp. v. Milgo Electronics Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977), the Court noted that, "at the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit," and that "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of

contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464. That is precisely what Cisco seeks to do here.

This Court has echoed the rulings and rationale of *Gluckin* and *Katz* many times. For example, in *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F.Supp.2d 554, 558 (D.Del. 2003), this Court found that "[the patentee's] infringement claims against the defendants are fundamentally claims against the ordinary use of [the manufacturer's product]." In granting a stay of the customer suit, the Court noted that "the California court's determination regarding infringement and validity of the '432 patent will efficiently dispose of the infringement issues regarding [the manufacturer's] customers in this case." *Id.* at 558.

Likewise, in *Commissariat A L'Energie Atomique, supra*, this Court stayed cases against non-retailers and distributors of the accused product pending resolution of a suit involving the manufacturer. 2004 WL 1554382, at *2. The court reasoned that "[b]ecause the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of [the patentee's] asserted patents." *Id.* at *3. The Court concluded that if the manufacturers were "found to be not infringing, then there would be no need to proceed against the [customers]." *Id.* Thus, significant judicial economy would be achieved by first litigating the claims against the manufacturers, and a stay was appropriate.

The same was true in *Honeywell*. There, this Court stayed a patent infringement case against the manufacturer's customers pending the outcome of an action involving the manufacturer itself. *Honeywell.*, 2005 WL 2465898, at *4. The Court concluded that it was "unwise" to proceed with lawsuits against customers "when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and

when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation." *Id.* at *3.

As shown below, this case is in the same vein.

**B.    Cisco's Declaratory Judgment Case Is The Right Case For Adjudication of TS's Claims Against Cisco's TelePresence Products**

As a matter of case management, a stay of this action is the most sensible and efficient course for resolution of the parties' dispute. As a matter of fairness, a stay of this action is in the best interests of Cisco and its customers. That a stay will cause no prejudice to TS, as shown below, is even further reason that a stay should be granted.

**1.    Staying This Case Until The Northern District Action Is Resolved Will Streamline This Case And A Trial**

As noted above, one critical factor in the stay analysis is whether a stay would simplify the issues and trial of the case. Here, as in many customer suits, there is little doubt that resolution of Cisco's declaratory judgment suit will streamline these proceedings and, depending on the outcome, may moot them altogether.

**a.    The Outcome Of The Northern District Action Involving Cisco Will Simplify – If Not Eliminate – The Pending Claims**

As explained above, the purpose of Cisco's declaratory judgment action is to obtain a decision on the merits of the dispute between Cisco and the patentee, without needlessly dragging Cisco's customers into the fray.

Resolution of Cisco's declaratory judgment action in lieu of this suit will not only allow for litigation between the proper parties but will avoid or significantly streamline adjudication of a cumbersome customer suit. Just as in *Ricoh*, *Commissariat* and *Honeywell*, there is little doubt that the outcome of Cisco's declaratory judgment action will have a direct impact on this case. For example, a judgment that the '526 patent is invalid would eliminate

TS's claims altogether and would allow Cisco and its customers to rightfully continue their actions with respect to the Cisco TelePresence product line without the specter of TS's allegations. Similarly, a finding that Cisco's TelePresence products do not infringe would be binding on TS and Margalla. Indeed, a judgment of invalidity or non-infringement in the Northern District of California would likely relieve this Court from adjudication of those claims, or at least sharply narrow the disputed issues concerning those claims.[4] Even in the unlikely event that TS prevailed in the Northern District of California and damages were awarded against Cisco, TS cannot collect double damages for the manufacture and use of the same allegedly infringing equipment from both Cisco and its customers. Thus, an award of damages against Cisco should exhaust any remedy against its customers. *See, e.g., Delphi*, 2008 WL 2941116, at *5 ("Delphi as manufacturer is the natural defendant because any resolution vis-a-vis Delphi would be global as far as its PODs customers and, for that matter, ATI would be concerned.").

> **b.    The Northern District Of California Is The More Appropriate Forum For Adjudication Of This Dispute**

According to TS's complaint, none of the parties have a principal place of business in or significant facilities in Delaware. D.I. 1, Complaint at ¶¶ 4-12. The plaintiff is a limited liability company formed in Texas and having no meaningful ties to this district.[5] *Id.* at

---

[4]    Of course, judgment in Cisco's declaratory judgment action would also protect Cisco's other customers from infringement allegations or licensing demands. This would avoid possible piecemeal litigation against Cisco's customers, which is both inefficient and, if allowed to proceed, creates a risk of inconsistent judgments on issues of infringement and patent invalidity. *See, e.g., Delphi*, 2008 WL 2941116, at *5 (noting that the "logic of the customer-suit exception applies well to this case" because, among other things, "[a]s a matter of judicial economy, global settlement is preferred over piecemeal litigation").

[5]    TS is controlled by Acacia Research Corporation, a Delaware corporation having national contacts and a principal place of business in California and extensive contacts in the Northern District of California. *See* Exh. 1 [Cisco's DJ Complaint] at ¶¶ 3, 13-15; *see also, e.g.*, Exh. 2 [Acacia Research Corporate Headquarters].

¶ 4; *see also* Exh. 3 [Texas State Taxable Entities Search for TS] (identifying TS as a Texas limited liability company and listing Acacia Patent Acquisition LLC of Newport Beach, California as its sole member). Three of the Customers are not incorporated in this district, and none of the Customers have principal places of business in this district. D.I. 1, Complaint at ¶¶ 5-12. Instead, these customers are national enterprises with principal places of business scattered across the United States and ties to many different fora. *Id.* at ¶¶ 5-12; *see also, e.g.,* Exh. 4 [Staples Find A Store]; Exh. 5 [Find HSBC Branches]; Exh. 6 [Wachovia Locations]; Exh. 7 [Cabelas Find A Store Near You] (showing offices, branches or stores in many states).

In contrast, the activities, evidence and effects of this litigation are all tied and directed primarily to the Northern District of California.

At the outset, Cisco, its employees that are most likely to have relevant information about the accused TelePresence products, and technical and business documentation most likely to be relevant to TS's infringement claims are located primarily at Cisco's headquarters in the Northern District of California. *See* Stucki Decl. at ¶¶ 2-4. Likewise, the inventors named on the patent and Margalla, the named assignee, also reside in the Northern District of California. *See* Exh. 8 [March 25, 2008 Assignment] (identifying named inventors of the '526 patent as Saqib Jang of Woodside, California and Mark Kent of Los Altos Hills, California, and Margalla as a "California based corporation having a place of business at 1339 Portola Road, Woodside California"); Exh. 9 [California Secretary of State Information for Margalla]. In short, most of the key evidence relating to the '526 patent (including whether it is valid) and to the accused products (including whether they function in a way that infringes the '526 patent) is in the Northern District of California.

So too is the harm from TS's claims likely to be focused far more in the Northern District of California and on its residents than in this district. Not only does TS's complaint seek to enforce the '526 patent against residents of the Northern District of California (including Cisco customers with principal places of business or operations in that judicial district), but in that district TS's allegations will undoubtedly have a significant impact on Cisco and Cisco's business there.

The balancing of convenience and interest of two venues has often been a factor in stay analysis for customer suits. For example, in *Gluckin*, the Second Circuit found numerous factors justified a stay of the first-filed customer suit, including the place where the manufacturer made, marketed and sold the accused product, the location of relevant witnesses (including the inventor) and documents, and the states of incorporation and place of business of the manufacturer and the patentee. 407 F.2d at 179-180.

Likewise, in *Arrow Comm. Labs, Inc. v. John Mezzalingua Assoc., Inc.*, 2005 WL 2786691, at *3 (D.Del. Oct. 26, 2005), this Court transferred a first-filed patent infringement action to the Northern District of New York where the later-filed declaratory judgment action was pending. There, the Court found "that the District of Delaware has no connection to the subject matter of plaintiff's lawsuit, except that defendant is incorporated there," and in contrast, that a transfer was warranted because all of defendant's relevant witnesses are in New York, "all the documents and records related to the accused product are in New York, and the subject matter of the lawsuit has significant local interest in New York." *Id.* at *4; *see also, e.g., Micron Tech., Inc. v. Mosaid Tech, Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) ("The first-filed suit rule, for instance, will not always yield the most convenient and suitable forum."); *St. Clair Intellectual Prop. Consultants, Inc. v. Mirage Sys., Inc.*, 419 F.Supp.2d 620, 624 (D.Del. 2006) (staying

Delaware case in favor of an action pending in California where the inventors had not been joined in the Delaware action, where Delaware was highly inconvenient for the inventors and others based in California, and where California's public interest in resolving the dispute far exceeded any interest of the Delaware court); *Delphi*, 2008 WL 2941116 at *5 (applying customer suit exception where, among other things, the only apparent connection to the forum of the customer suit was an unspecified generalized allegation that the defendants had conducted business and alleged acts of infringement there, and where the same acts had been committed in essentially every judicial district in America).  Here, a balancing of convenience and interests of this district and the Northern District of California clearly support stay of this action in favor of Cisco's declaratory judgment suit.

*    *    *

As shown above, this case presents compelling reasons why this customer suit should be stayed in favor of Cisco's declaratory judgment suit in the Northern District of California.  Not only would a stay be consistent with the rulings and rationale of this Court in other cases with similar facts, but it would allow for the most efficient and equitable resolution of the dispute surrounding Cisco's TelePresence products.  By staying this action, the Court would permit Cisco to stand up for its products and its customers and to resolve TS's claims against its TelePresence products in the forum with the greatest interest in—and greatest connection to— resolution of those claims.

### 2.    A Stay Will Not Unduly Prejudice Plaintiff

Although the factors above weigh decidedly in favor of stay, the scales tip even further in favor of a grant of Cisco's motion when the impact of a stay on TS is considered. Because TS has no real ties to this district and no legitimate reason to sue Cisco's customers rather than Cisco itself, a stay of this action will not unduly prejudice or present a clear tactical

disadvantage to TS.[6]  If anything, a stay of this action will (as discussed above) "vastly simplify the issues and trial of the case" once the Northern District of California action is completed, and in doing so, will benefit everyone involved, including TS.  *See e.g.*, *Honeywell.*, 2005 WL 2465898, at *4.

### 3.    A Stay Is Warranted Because This Case Is In Its Infancy

Finally, a stay is strongly supported because this case is in its infancy.  Given its early stage, neither the parties nor the judicial process will be prejudiced if this case is stayed and the Northern District of California action goes forward in its stead.  *See, e.g., Cognex Corp. v. Nat'l Instruments Corp.*, 2001 WL 34368283, at *1, *3 (D.Del. June 29, 2001) (denying stay because, among other grounds, discovery was about to close, a trial was just months away, and "given the late stage of [the moving party's] request [for a stay], the Court finds that any delay in the trial date scheduled for this case would severely prejudice [the non-moving party]").

## VI.    CONCLUSION

For each of the aforementioned reasons, Cisco respectfully requests that the Court grant its motion to intervene and to stay this case.

---

[6]    To the extent TS perceives that it derives some increased litigation leverage from suing Cisco's customers and not Cisco itself, that leverage is not a legitimate or cognizable basis for it to avoid a stay of this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
1201 N. Market St.
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Sonal N. Mehta
Rip Finst
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

April 17, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Joelle E. Polesky, Esquire
SMITH, KATZENSTEIN & FURLOW LLP

I further certify that I caused copies of the foregoing document to be served on April 17, 2009, upon the following in the manner indicated:

Joelle E. Polesky, Esquire                                          *VIA ELECTRONIC MAIL*
SMITH, KATZENSTEIN & FURLOW LLP                                       *and HAND DELIVERY*
800 Delaware Avenue
10th Floor
Wilmington, DE 19801

Anthony G. Simon, Esquire                                           *VIA ELECTRONIC MAIL*
Timothy E. Crochocsinski, Esquire
THE SIMON LAW FIRM, P.C.
701 Market Street – Suite 1450
St. Louis, MO 63101

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)