# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **TELECONFERENCE SYSTEMS, LLC,**<br><br>                    Plaintiff,<br><br>v.<br><br>**PROCTOR & GAMBLE PHARMACEUTICALS, INC., et al.,**<br><br>                    Defendants. | Case No. 09-200 (JBS) |

## PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION TO INTERVENE AND TO STAY CASE

SMITH, KATZENSTEIN & FURLOW, LLP
Joelle E. Polesky
800 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
P. 302.652.8400
F. 302.652.8405
jpolesky@skfdelaware.com

THE SIMON LAW FIRM PC
Anthony G. Simon
Timothy E. Grochocinski
701 Market Street, Suite 1450
Saint Louis, Missouri 63101
P. 314.241.2929
F. 314.241.2029
asimon@simonlawpc.com
teg@simonlawpc.com

***ATTORNEYS FOR PLAINTIFF***
***TELECONFERENCE SYSTEMS, LLC***

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ...……………………… 1

II. SUMMARY OF ARGUMENT …………………………………………… 1

III. STATEMENT OF THE FACTS ………………………………………….. 1

IV. ARGUMENT ……………………………………………………………… 1

    A. The Customer Suit Exception to the First-Filed Rule…..……………… 1

        1. Legal Standards for the Customer-Suit Exception …………… 1

        2. This Case Does Not Fall Within the Customer-Suit Exception … 4

    B. A Stay is Not Warranted in this Case ……………………………... 8

        Factors 1 and 2: A Stay Will Result in Piecemeal Litigation and Will Unduly Prejudice Plaintiff…………………….. 9

        Factors 3 and 4: Discovery Has Not Been Completed and a Trial Date Has Not Been Set in the California Action or in this Action ……………………………………... 13

V. CONCLUSION ……………………………………………………………. 13

# **TABLE OF AUTHORITIES**

**Case**                                                                                  **Page**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*,
    133 F.Supp.2d 354 (D. Del. 2001) ……………………………………….. 2-6

*Arrow Communication Laboratories, Inc. v. John Mezzalingua Assoc., Inc.*,
    2005 WL 2786691 (D.Del. 2005) ……………………………………….. 9, 11

*Codex Corp. v. Milgo Electronic Corp.*,
    553 F.2d 735 (4th Cir.), *cert denied,* 434 U.S. 860 (1977) …………………... 4

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
    2004 WL 1554382 (D.Del. May 13, 2004) …………………………………... 6, 8

*Dentsply Int'l Inc. v. Kerr Manufacturing Co.*,
    734 F.Supp. 656 (D. Del. 1990) ……………………………………………… 2, 4, 7, 9, 12

*E.E.O.C. v. University of Penn.*,
    850 F.2d 969 (3d Cir. 1988) ………………………………………………….. 9

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ………………………………………………... 9

*Hanson v. Alpine Valley Ski Area, Inc.*,
    718 F.2d 1075 (Fed. Cir. 1983) ……………………………………………….. 7

*Honeyewll Int'l Inc. v. Audiovox Communications Corp.*,
    2005 WL 2465898 (D.Del. May 18, 2005) …………………………………… 6, 8-9

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ……………………………………………….. 1-6, 10

*Katz v. Siegler*,
    909 F.2d 1459 (Fed. Cir. 1990) ……………………………………………….. 3

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ………………………………………………… 11-12

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*,
    2007 WL 4376104 (E.D. Tex. Dec. 13, 2007) ………………………………... 4

*Ricoh Co. v. Aeroflex Inc.*,
    279 F.Supp.2d 554 (D.Del. Aug. 29, 2003) ………………………………… 8

*St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.*
    419 F.Supp.2d 620 (D.Del. 2006) …………………………………………... 11

*Tegic Communications Corp. v. Board of Regents of the Univ. of Texas System*
    458 F.3d 1335 (Fed. Cir. 2006) …………………………………………... 3

*Tuff Torq Corp. v. Hydro-Gear Limited Partnership,*
    882 F.Supp. 359 (D.Del. 1994) …………………………………………. 8

*William Gluckin & Co. v. Int'l Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969) ………………………………………………….. 3, 5

## **Statutes**

28 U.S.C. § 1404(a) ………………………………………………………………….. 12

35 U.S.C. § 271 …………………………………………………………………. 12

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this action for patent infringement on March 27, 2009.  Complaint (D.I. 1). Plaintiff's original complaint accused eight companies of infringing one or more claims of U.S. Patent No. 6, 980,526 ("the '526 patent") via their use of a product, or products, in Cisco's Telepresence line of products.  Complaint ¶¶ 19-26 (D.I. 1).  On April 8, 2009, Cisco filed a declaratory judgment action regarding the '526 patent in the Northern District of California. Cisco Brief, Exhibit 1 (D.I. 14).  On April 23, 2009, Plaintiff filed its First Amended Complaint in this matter, adding Cisco as a defendant.  Amended Complaint (D.I. 18).

## II.    SUMMARY OF ARGUMENT

Cisco's motion presents three issues.  Cisco first requests that this Court permit it to intervene in this matter.  On April 23, 2009, Cisco was added as a defendant in this matter.[1] Cisco's motion to intervene should therefore be denied as moot.  The remaining two issues are:

1. Does this case fall within the customer-suit exception to the first-filed rule?

2. Is a stay warranted in this case?

For the reasons stated herein, both of these questions should be answered in the negative and Cisco's motion should be denied.

## III.    STATEMENT OF THE FACTS

The pertinent facts are set forth in the Argument sections, as appropriate.

## IV.    ARGUMENT

**A.    The Customer-Suit Exception to the First-Filed Rule.**

**1.    Legal Standards for the Customer Suit Exception.**

The general rule is that "as a principle of sound judicial administration, the first suit should have priority," absent special circumstances.  *Kahn v. General Motors Corp.*, 889 F.2d

---

[1] On April 27, 2009, proof of service on defendant Cisco Systems, Inc. was filed with the Court.  (D. I. 19).

1078, 1081 (Fed. Cir. 1989). Restraint of the first-filed suit is made only to prevent wrong or injustice, applying the general requirement that "the same parties as well as the same issues are involved in the two actions." *Id.*

The "customer-suit" exception to the first-filed rule applies "where the first suit is filed against a customer who is <u>simply a reseller</u> of the accused goods" and where the "second action would <u>resolve all charges against the customers</u> in the stayed suit." *Id.* (emphasis added); *see also Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F.Supp.2d 354, 357 (D. Del. 2001). The customer suit exception is not an inflexible command that a second filed manufacturer's action be tried prior to a first filed action against a customer. *Dentsply Int'l Inc. v. Kerr Manufacturing Co.*, 734 F.Supp. 656, 659 (D. Del. 1990). Rather than stating a *per se* rule, the customer suit exception must be applied with due consideration of "both judicial economy and litigants' economy, as well as the entitlement of litigants to resolution of their claims." *Kahn*, 889 F.2d at 1082.

In *Kahn*, an action was filed in the Southern District of New York against General Motors. *Id*. at 1078. Subsequently, Motorola filed a declaratory judgment action in Illinois and filed a motion to stay the New York action, which was granted. *Id*. The Federal Circuit vacated the stay holding that "in those cases in which the customer suit exception has been held to favor the forum of the second-filed action, the second action <u>would resolve all charges against the customers in the stayed suit, including liability for damages</u>." *Id*. at 1081, 1083 (emphasis added). The Federal Circuit explained that all charges against General Motors would not be resolved in the Illinois action because Kahn would still have to relitigate the question of infringement and perhaps validity against General Motors. *Id*. The Federal Circuit noted that General Motors had not agreed to be bound by the decision in the Illinois action. *Id*. at 1082.

2

All liability for damages would also not have been resolved in the Illinois suit because "the measure of General Motors' obligation for damages and Motorola's (if any) involve different parameters." *Id*. The Federal Circuit also distinguished *Kahn* from prior cases that invoked the customer suit exception because General Motors was not a "mere reseller" of the accused product. *Id*. at 1082; *see also William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (finding that Woolworth was a mere reseller of the products manufactured by Gluckin so stay in favor of action brought by Gluckin was warranted).

In *Tegic Communications Corp. v. Board of Regents of the Univ. of Texas System,* the Federal Circuit also found the customer suit exception inapplicable. 458 F.3d 1335, 1343 (Fed. Cir. 2006). In *Tegic,* the University filed a lawsuit in Texas against forty-eight cellular-telephone companies for patent infringement. *Id*. at 1337. Tegic, who sold and licensed software to thirty-nine of the companies, brought a declaratory judgment action in Washington. *Id*. In holding that the Texas suits should not be stayed in favor of Tegic's declaratory judgment action, the Federal Circuit noted that the cellular-phone companies in the Texas action are not "mere resellers" of the products manufactured by Tegic and the cellular-phone companies have not agreed to be bound by any decision in the Washington action. *Id*. at 1343. The Federal Circuit noted that in evaluating the customer suit exception "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Id*. (quoting *Katz v. Siegler,* 909 F.2d 1459, 1463 (Fed. Cir. 1990)).

This Court has previously recognized that in situations such as *Kahn* and *Tegic,* the customer suit exception should not be applied. In *Air Products and Chemicals, Inc.*, this Court declined to apply the customer suit exception because the defendant customer was "not merely a reseller" of the accused product. 133 F.Supp.2d at 357. This Court noted that in *Air Products*

3

the patentee alleged that Tesco, the purported customer, was a direct infringer via its use of the manufacturer's equipment. *Id*; *see also Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*, 2007 WL 4376104 * 3 (E.D. Tex. Dec. 13, 2007) (discussing *Air Products* and holding that because customers were alleged to directly infringe and the manufacturer was alleged to indirectly infringe the "fact-finder would still need to find that the customers directly infringed before finding that" the manufacturer indirectly infringed so the customer suit exception does not apply).

This Court also held the customer suit exception inapplicable in *Dentsply*, noting that "[t]here may be situations, due to the prospects of recovery of damages or other reasons in which the *patentee has a special interest in proceeding against a customer* himself, rather than solely as a shadow of the manufacturer, and therefore less weight should be given to the manufacturer's forum." *Dentsply,* 734 F.Supp. at 659-660 (quoting *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 736 n. 6 (4th Cir.), *cert denied,* 434 U.S. 860 (1977)).

From *Kahn, Tegic, Air Products* and *Dentsply* the following guideline can be distilled: (1) when the "customers" in the purported "customer-suit" are not mere resellers, or (2) when the disposition of the second-filed suit would not be dispositive of the first-filed suit, the customer-suit exception does not apply.

    **2.**    **This Case Does Not Fall Within the Customer-Suit Exception.**

The purported "customers" in the present suit are not mere resellers of the accused products. Disposition of the second-filed declaratory judgment action in the Northern District of California ("California Action") would not be dispositive of this suit. Cisco is also a defendant in this suit, the first-filed action. *See generally* Amended Complaint (D. I. 18). As a result, the customer-suit exception does not apply and this action should not be stayed.

On information and belief, none of the purported "customer" defendants re-sell any of the accused products. Rather, they are accused of directly infringing one or more claims of U.S. Patent No. 6,980,526 ("the '526 patent") via their use of a product in Cisco's Telepresence product line. Amended Complaint ¶¶ 20-27 (D. I. 18). This is the same as in *Kahn*, *Tegic* and *Air Products*, in which the Federal Circuit and this Court declined to apply the customer-suit exception.

Cisco's reliance on the Second Circuit's decision in *William Gluckin & Co. v. Int'l Playtex Corp.* is misplaced. In *Gluckin*, the Second Circuit affirmed the district court's decision to enjoin a first-filed action based on the customer-suit exception. *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178-80 (2d Cir. 1969). Playtex argued that the first-filed action against Woolworth should be allowed to proceed because "Woolworth allegedly has itself 'sold thousands of dollars of the infringing merchandise' and is 'an infringer of the patent in suit every bit as much as the manufacturer of the infringing article.'" *Id*. at 178. In other words, the customer defendant, Woolworth, was a "mere reseller" of the accused goods.

In *Kahn*, in which the purported "customer defendant" was accused of infringement via its use of the accused product, the Federal Circuit distinguished *Gluckin*, noting that Woolworth was a "mere reseller" and there were "controlling differences" between the situations in *Gluckin* and *Kahn*. *Kahn*, 889 F.2d at 1082; *see also Air Products,* 133 F.Supp.2d at 357 (holding that where defendant was not mere reseller, but rather was accused of direct infringement via its use of the accused product, the customer-suit exception did not apply). The same is true in this case. The purported "customer" defendants are being accused of infringing one or more claims of the '526 patent via their use of the accused products.

Cisco's reliance on the unreported opinions in *Commissariat A L'Energie Atomique v. Dell Computer Corp.,* 2004 WL 1554382 (D. Del. May 13, 2004) ("*Dell*") and *Honeyewll Int'l Inc. v. Audiovox Communications Corp.,* 2005 WL 2465898 (D. Del. May 18, 2005) is misplaced for the same reasons. In both *Dell* and *Honeyewell*, the non-manufacturer defendants were "mere re-sellers" of the accused products. This is the very situation that the Federal Circuit and this Court distinguished in *Kahn* and *Air Products*. *Kahn*, 889 F.2d at 1082; *Air Products,* 133 F.Supp.2d at 357. The purported "customer" defendants in this case are <u>not</u> "mere re-sellers." Therefore, the customer-suit exception does not apply.

Disposition of the California Action would also not be dispositive of this action. As in *Kahn*, the measure of the purported "customer" defendants' obligations for damages and Cisco's obligations for damages involve different parameters. *See Kahn*, 889 F.2d at 1081. Cisco incorrectly contends in its brief that "an award of damages against Cisco should exhaust any remedy against its customers." Cisco Brief, p. 14 (D. I. 14). Cisco markets the accused products to potential purchasers as a cost-savings mechanism. Exhibit 1, Cisco Telepresence Trends: Future Benefits Outlook, pp. 7, 14-15 (estimating cost-savings to be $2,000-$2,999 per executive per month in the US and $1,000-$1,999 for other employees in the US). Several of the named defendants have publicly expressed significant cost savings as a result of using the accused products. Exhibit 2, Procter & Gamble Implements Cisco Telepresence Solution in Latin America, *available at* http://newsroom.Cisco.com/dlls/2008/prod_093008c.html (Sept. 30, 2008) (identifying savings of several millions of dollars per month from using accused products); Exhibit 3, HSBC Opens Global Network of Virtual Conferencing Rooms, *available at* http://newsroom.Cisco.com/dlls/2008/prod_090408b.html (Sept. 4, 2008) (stating that a single Cisco Telepresence meeting can result in savings of up to $50,000); Exhibit 4, Global Healthcare

Company Improves Communications for Dispersed Employees (noting that Baxter Healthcare's use of Cisco Telepresence has reduced travel costs); Exhibit 5, Wachovia Chooses to Innovate with Cisco Telepresence (June 4, 2007) (noting use of Cisco Telepresence helps support Wachovia's goal of expense reduction). Reliance on estimated cost savings from use of an infringing product is a well settled method of determining damages for infringement. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080-81 (Fed. Cir. 1983).

In *Hanson*, the patentee sued Alpine Valley for its use of the infringing snow machines. *Id*. at 1076. The Federal Circuit upheld the determination of a reasonable royalty based on the estimated cost savings from Alpine's use of the infringing snow machines. *Id*. at 1080-81. In the present case plaintiff seeks such damages from the purported "customer" defendants based on the cost-savings they have realized from using the accused products. These damages are likely well in excess of the purchase price paid for the accused products. *See Hanson*, 718 F.2d at 1081 (holding that reasonableness of royalty "does not depend upon or have any relationship to the cost of a machine"). Cisco has not represented that it is obligated, or even willing, to indemnify the defendants in this suit for plaintiff's full measure of damages, including any damages that may be awarded based on defendants' cost-savings from their use of the accused products. As in *Kahn*, Cisco and the other defendants in this lawsuit have different damages obligations and the disposition of the California Action would not be dispositive of and resolve all charges against the other defendants in this action. As noted by this Court in *Dentsply*, "[t]here may be situations, due to the prospects of recovery of damages or other reasons in which the *patentee has a special interest in proceeding against a customer* himself …." 734 F.Supp. at 659-660. This is such a situation.

7

Cisco relies on this Court's decision in *Ricoh Co. v. Aeroflex Inc.*, 279 F.Supp.2d 554 (D. Del. Aug. 29, 2003). In *Ricoh* this Court held that:

> It is clear that, based on the outcome of the California case, either Synopsys will prevail and use of the Design Compiler will be determined to be non-infringing, or Ricoh will prevail, and Synopsys will be forced to pay damages or license the patent. <u>In the latter situation, Synopsys' customers would then be immunized from liability</u>. For these reasons, the court finds that that first-filed rule does not control the present inquiry.

*Id*. at 558 (emphasis added). In *Ricoh*, disposition of the second-filed manufacturer action would have resulted in disposition of the first-filed action. *Id*. In the present case, given the differences in the defendants' potential damages obligations, as well as the fact that the defendants in this action have not agreed to be bound by any decision in the California Action, disposition of the California Action would not result in disposition of this case.

In all of the cases cited by Cisco in which a first-filed suit was stayed under the customer-suit exception, the manufacturer was not a defendant in the first-filed action that was stayed. *See generally*, *Gluckin*, 407 F.2d 177; *Dell*, 2004 WL 1554382; *Honeywell*, 2005 WL 2465898; *Ricoh*, 279 F.Supp.2d 554. Cisco is a defendant in this lawsuit, the first-filed lawsuit. Amended Complaint (D.I. 18). In accordance with the Federal Circuit's decision in *Kahn* and *Tegic*, as well as this Court's decisions in *Air Products* and *Dentsply*, the customer-suit exception does not apply and this lawsuit should not be stayed in favor of the second-filed California Action.

**B.**     **<u>A Stay of this Case is Not Warranted.</u>**

The first-to-file rule normally serves a purpose of promoting efficiency well and should not be disregarded lightly. *Tuff Torq Corp. v. Hydro-Gear Limited Partnership,* 882 F.Supp. 359, 364 (D. Del. 1994). There must be sound reason that would make it unjust or inefficient to continue the first-filed action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993). Courts presented with exceptional circumstances may exercise their discretion to depart

8

from the first-filed rule. *Arrow Communication Laboratories, Inc. v. John Mezzalingua Assoc., Inc.*, 2005 WL 2786691 * 3 (D. Del. 2005) (citing *E.E.O.C. v. University of Penn.,* 850 F.2d 969, 979 (3d Cir. 1988). The burden is on the moving party to present some exceptional circumstances why the court should depart from the first-filed rule. *Id*.

In determining whether to stay proceedings, a court must weigh the competing interests of the parties in an attempt to maintain an even balance. *Dentsply Int'l Inc.,* 734 F.Supp. at 658. In maintaining that even balance, the court must consider whether "there is 'even a fair possibility' that the stay would work damage on another party." *Id*. If such a "fair possibility" exists, the moving party must make a showing of "'a clear case of hardship or equity'" before the court can enter a stay order. *Id*.

When considering a motion to stay, the court should consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *Honeywell*, 2005 WL 2465898 at *2.

Of these four factors (1) and (2) weigh against staying the current proceedings and (3) and (4) are neutral. As a result, Cisco's motion should be denied.

### Factors 1 and 2: A Stay Will Result in Piecemeal Litigation and Will Unduly Prejudice Plaintiff.

As discussed *supra*, disposition of the California Action will not result in disposition of this action. The defendants in this action have different damages obligations and Cisco has not indicated that it is obligated, or willing, to indemnify the other defendants in this lawsuit for the full extent of their potential damages obligations. In addition, the defendants in this lawsuit, other than Cisco, are not defendants in the California Action and have not agreed to be bound by any decision in the California Action.

9

These were the very facts on which the Federal Circuit reversed the stay entered in *Kahn*. *See Kahn*, 889 F.2d at 1081-83. In *Kahn*, the purported "customer" defendants did not express a view on their convenience because they were not parties to the second-filed action. *Id*. at 1083. In this case none of the defendants have contended that the Northern District of California is more convenient, other than Cisco, because these defendants are not parties to the California Action.

In *Kahn*, the Federal Circuit also held that "Motorola's asserted convenience is not sufficient reason to invoke the court's discretionary power to stay the first-filed action."[2] *Id*. The Federal Circuit noted that a "transfer is inappropriate when it merely serves to shift inconvenience from one party to another" and that "[p]recedent shows the general disfavor with which stays are viewed." *Id*. The same is true in this case. Cisco's only argument is that the Northern District of California is more convenient for Cisco. As stated in Cisco's brief, the other defendants in this lawsuit "are national enterprises with principal places of business scattered across the United States and ties to many different fora." Cisco Brief, p. 15, Exhibits 4-7 (D.I. 14). For example, defendant Staples is a Delaware corporation with its principle place of business in Framingham, Massachusetts. Amended Complaint ¶ 10 (D.I. 18); Exhibit 6. Defendant Enbridge is a Delaware limited liability company with its principal office in Houston, Texas. Amended Complaint ¶ 12 (D.I. 18); Exhibit 7. Defendant Wachovia is a North Carolina corporation with its principal office is Winston Salem, North Carolina. Amended Complaint ¶ 9 (D.I. 18). Plaintiff is a Texas corporation with its principal place of business in Austin, Texas. Cisco Brief, Exhibit 3 (D.I. 14). While the Northern District of California may be more convenient for Cisco, that does not justify inconveniencing the other parties to this litigation, including Plaintiff.

---

[2] Motorola was the party who moved to stay the first-filed lawsuit.

In support of its argument Cisco relies on *Arrow Communication*, *Micron Technology* and *St. Clair Intellectual Property Consultants*. Cisco Brief, p. 16. In *Arrow*, the parties in the first-filed and second-filed suits were the same, all of the parties had their principal places of business in New York, and the locus of the alleged infringement occurred in New York. *Arrow Communications*, 2005 WL 2786691 * 2-3. In the present case, the parties in this action and the California Action are different, not all of the parties have their principal place of business in the Northern District of California, or even in California, and the locus of the alleged infringement is not limited to California, but is rather all over the United States. *See e.g.,* Exhibit 3 (noting that HSBC is using accused products in Chicago and New York); Exhibit 5 (Wachovia is using accused products in Charlotte, North Carolina and Richmond, Virginia).

*St. Clair Intellectual Property Consultants, Inc. v. Mirage Systems, Inc.* involved a dispute over ownership of a patent, as well as employment contracts, and involved California state law. 419 F.Supp.2d 620, 624 (D. Del. 2006). The first-filed action was filed in California state court. *Id*. at 622. The second-filed action was a declaratory judgment action in this Court. *Id*. This Court stayed the second-filed Delaware action because the events giving rise to the dispute occurred in California, state court was a better forum for consideration of state law contract issues, and all necessary parties were not joined in the Delaware action. *Id*. at 624. The events giving rise to the present case did not all occur in California, the present suit involves questions of federal law, and there are different parties in the California Action and this action. *See e.g.,* Exhibit 3 (noting that HSBC is using accused products in Chicago and New York); Exhibit 5 (Wachovia is using accused products in Charlotte, North Carolina and Richmond, Virginia).

*Micron* did not even involve a motion to stay. *See generally Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008). Rather, it was a decision on a motion to transfer pursuant to 28 U.S.C. § 1404(a), which involves different factors and is a separate analysis. *Id.* Even if Cisco were somehow trying to indirectly move this Court to transfer this action, which is relief that it has not requested, Cisco would first have to show that this action could have been brought in the Northern District of California. 28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any other district or division where it might have been brought"). Cisco has failed to meet this burden.[3]

Cisco also incorrectly contends that Plaintiff has "no legitimate reason to sue Cisco's customers rather than Cisco itself, …" Cisco Brief, p. 17 (D.I. 14). As discussed *supra*, Plaintiff has alleged that the purported "customer" defendants in this lawsuit have infringed, and continue to infringe, one or more claims of the '526 patent via their use of the accused products. Amended Complaint ¶¶ 20-27 (D.I. 18). These defendants have different damages obligations than Cisco due to the cost-savings these defendants have realized from such infringement. *See* Exhibits 1-5. Plaintiff has a statutory right to protect its interests and enforce its rights against infringers. 35 U.S.C. § 271. Cisco is requesting that this Court delay Plaintiff's from exercising this statutory right, which clearly prejudices Plaintiff. *See Dentsply Int'l, Inc.*, 734 F.Supp. at 658 (holding that any delay in litigation will forestall the trial date and result in prejudice to the plaintiff). In the face of such prejudice to Plaintiff, Cisco must make a showing of "a clear case of hardship or inequity." *Id*. Cisco has failed to meet this burden.

---

[3] Plaintiff is a Texas corporation with offices in Texas. Amended Complaint ¶ 4 (D.I. 18); CISCO Brief, Exhibit 3 (D.I. 14). Cisco has failed to establish that Plaintiff, or any of the other defendants in this suit, are subject to personal jurisdiction in the Northern District of California. Plaintiff has not consented to jurisdiction in the Northern District of California.

12

Staying this action in favor of the California Action will not promote judicial economy or simplify the issues, but rather will result in piecemeal litigation and will only serve to unduly prejudice Plaintiff. As a result, the first two factors strongly weigh against staying the present action.

**Factors 3 and 4.**     **Discovery Has Not Been Completed and a Trial Date Has Not Been Set in the California Action or this Action.**

Discovery has not been completed and a trial date has not been set in this case or in the California Action. As a result, these factors are neutral. At a minimum, these factors are outweighed by factors 1 and 2.

## V.     CONCLUSION

Cisco has failed to establish that the customer-suit exception to the first-filed rule is applicable in this case and Cisco has failed to meet its burden of presenting exceptional circumstances as to why this Court should depart from the first-filed rule. As a result, Cisco's motion should be denied.

DATED: May 26, 2009    Respectfully submitted,

　/s/  Robert K. Beste            .
Joelle E. Polesky (No. 3694)
Robert K. Beste, III (No. 3931)
SMITH, KATZENSTEIN & FURLOW, LLP
800 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
P. 302.652.8400
F. 302.652.8405
jpolesky@skfdelaware.com


THE SIMON LAW FIRM PC
Anthony G. Simon
Timothy E. Grochocinski
701 Market Street, Suite 1450
Saint Louis, Missouri 63101
P. 314.241.2929
F. 314.241.2029
asimon@simonlawpc.com
teg@simonlawpc.com

***ATTORNEYS FOR PLAINTIFF
TELECONFERENCE SYSTEMS, LLC***

14

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a copy of the foregoing was served on counsel for defendants on May 26, 2009, by the Court's CM/ECF system.

                 /s/ Robert K. Beste .
                 Robert K. Beste, III