IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TELECONFERENCE SYSTEMS, LLC,               )
                                           )
                     Plaintiff,            )
                                           )
          v.                               )    C.A. No. 09-200 (JBS)
                                           )
PROCTOR & GAMBLE                           )
PHARMACEUTICALS, INC., HSBC USA,           )
INC., BAXTER HEALTHCARE                    )
CORPORATION, APPLIED MATERIALS,            )
INC., WACHOVIA CORPORATION,                )
STAPLES, INC., CABELA'S                    )
INCORPORATED, ENBRIDGE HOLDINGS            )
(U.S.), L.L.C. and CISCO SYSTEMS, INC.,    )
                                           )
                     Defendants.           )

### CISCO'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY CASE

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant
Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Sonal N. Mehta
Rip Finst
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

June 19, 2009

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   THIS ACTION SHOULD BE STAYED PENDING ADJUDICATION OF
      CISCO'S DECLARATORY JUDGMENT ACTION ...................................... 3

      A.    TS's Narrow And Rigid Interpretation Of The Customer-Suit Exception Is
            Unsupported ................................................................................. 3

      B.    Under The Correct Interpretation Of The Customer-Suit Exception, This
            Case Should Be Stayed ..................................................................... 8

            1.    A Stay Would Streamline These Proceedings ............................. 8

            2.    TS Does Not Meaningfully Dispute That The Northern District
                  Of California Is The More Appropriate Forum For
                  Adjudication Of This Dispute ................................................ 11

III.  THE COURT SHOULD HOLD THIS MOTION IN ABEYANCE WHILE
      JUDGE WHITE RESOLVES JURISDICTIONAL CHALLENGES TO THE
      NORTHERN DISTRICT OF CALIFORNIA ACTION ................................ 14

IV.   CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

**Cases**

*Abbott Labs. v. Diamedix Corp.*,
47 F.3d 1128, 1132 (Fed. Cir. 1995) .......................................................................... 15

*Air Prods. & Chemicals, Inc. v. MG Nitrogen Servs, Inc.*,
133 F. Supp. 2d 354 (D. Del. 2001)............................................................................ 4

*Ambrose v. Steelcase, Inc.*,
2002 WL 1447871 (N.D. Ill. July 3, 2002)........................................................... 6, 11

*Codex Corp. v. Milgo Electronics Corp.*,
553 F.2d 735 (1st Cir. 1977)...................................................................................... 3

*Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*,
2004 WL 1554382 (D. Del. May 13, 2004).......................................................... 6, 10

*Delphi Corp. v. Automotive Technology International, Inc.*,
2008 WL 2941116 (E.D. Mich. Jul. 25, 2008) ......................................................... 10

*Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*,
734 F. Supp. 656 (D. Del. 1990)................................................................................ 8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970), *modified on other grounds by Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) ......................................... 9

*Honeywell Int'l Inc. v. Audiovox Comm. Corp.*,
2005 WL 2465898 (D. Del. May 18, 2005)................................................................ 7

*In re Genentech, Inc.*,
2009 WL 1425474 (Fed. Cir. May 22, 2009) ........................................................... 12

*Kahn v. General Motors, Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ......................................................................... 3, 4, 5

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) ...................................................................... 2, 3, 5, 7

*Ricoh Co. v. Aeroflex, Inc.*,
279 F. Supp. 2d 554 (D. Del. 2003)....................................................................... 5, 7

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Sherwood Med. Co. v. Ivac Med. Sys., Inc.*,
   1996 WL 700261 (D. Del. Nov. 25, 1996) ............................................................ 12

*St. Clair Intell. Prop. Consultants, Inc. v. Mirage Sys., Inc.*,
   419 F.Supp.2d 620 (D. Del. 2006) ................................................................ 11, 12

*Tegic Comm. Corp. v. Board of Regents of the Univ. of Texas Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006) ...................................................................... 4

*Transclean Corp. v. Jiffy Lube Intern., Inc.*,
   474 F.3d 1298 (Fed. Cir. 2007) ..................................................................... 10

*William Gluckin & Co., Inc. v. Int'l Playtex Corp.*,
   407 F.2d 177 (2nd Cir. 1969) ....................................................................... 12

## I.    __INTRODUCTION__

Teleconference System's ("TS's") Opposition Brief ("Opposition") is most notable for what it does not dispute. TS does not dispute Cisco's showing that the Northern District of California is where the accused Cisco TelePresence products were developed, where information about those products is located, and where Cisco resides. TS does not dispute Cisco's showing that the Northern District of California is where the named inventors and patent owner reside. TS does not dispute that there is no particular connection of this case to this forum other than TS's decision to file here. And TS does not dispute Cisco's showing that its declaratory judgment suit in the Northern District of California is likely to resolve the liability issues on the '526 patent for both Cisco and its customers by resolving threshold questions of infringement and validity of the '526 patent. In short, TS does not dispute the core reasons underlying Cisco's motion.

Instead, TS argues that this case should go forward because it was first-filed. TS's argument is based on two "guidelines" it purports to distill from the case law—(1) that the customer-suit exception applies only to customers that are "mere resellers" and (2) that the customer-suit exception applies only when the second-filed manufacturer suit is completely dispositive of the customer suit. Rigidly applying these "guidelines," TS argues that application of the customer-suit exception and a stay of this case are not warranted because the customer defendants are users and not "mere resellers," and because TS has theories that would allow it to obtain greater damages from Cisco's customers in this suit than it would from Cisco in the declaratory judgment action. Neither argument withstands scrutiny.

First, the customer-suit exception is not limited to cases against "mere resellers." Although cases have found the exception to be applicable where a patent holder chooses to sue mere resellers for strategic benefit, the exception is not so narrowly confined. To the contrary,

the case law and common sense make clear that the customer-suit exception applies as broadly as its name suggests—to *customer* suits.  Notwithstanding TS's after-the-fact addition of Cisco to this suit in an effort to avoid application of the exception, there is no question that the customer defendants are *customers* and that this is a customer-suit for purposes of the doctrine.

Second, the customer-suit exception is not limited to cases in which the second-filed manufacturer action is completely dispositive of all issues in the customer suit.  To the contrary, as the Federal Circuit recognized in *Katz*, the customer-suit exception applies where the manufacturer suit will resolve "major issues before that court, including patent infringement, patent validity and [the plaintiff's] capacity to sue" as to the customers, even if additional issues remain for the customer suit after a stay is lifted.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  TS does not dispute that such major issues may be resolved by Cisco's declaratory judgment action, including precisely the issues of patent infringement, patent validity and TS's capacity to sue, as contemplated in *Katz*.  TS's only argument is that its *damages* claims may be different for the customer defendants than for Cisco.  Not only does that argument ignore the near-certainty that TS will attempt to make essentially the same damages claims against Cisco in the declaratory judgment action, but it also ignores the important (and undisputed) fact that many (and perhaps all) *liability* issues may be resolved in Cisco's action.

In short, there can be no meaningful dispute that Cisco's declaratory judgment action is the most efficient and economical case for resolving the dispute regarding Cisco's TelePresence products.[1]  Nor is there any question that Cisco's declaratory judgment action is

---

[1]    The fact that TS added Cisco to this suit after Cisco had filed this motion does not meaningfully change the analysis.  Although the addition of Cisco as a party may make discovery about Cisco's TelePresence product line easier, the fundamental rationale underlying the customer-suit exception still applies.  TS has identified no reason why eight customers accused of infringing the '526 patent merely for their use of Cisco's

the fairest way to resolve that dispute without forcing eight Cisco customers to litigate a patent case about Cisco's products. *See Katz*, 909 F.2d at 1464 (noting that "at the root of [this] preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit" and that "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.") (citing *Codex Corp. v. Milgo Electronics Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)).

This case should be stayed so Cisco's declaratory judgment case can go forward.[2]

## II.    THIS ACTION SHOULD BE STAYED PENDING ADJUDICATION OF CISCO'S DECLARATORY JUDGMENT ACTION

### A.    TS's Narrow And Rigid Interpretation Of The Customer-Suit Exception Is Unsupported

As explained in Cisco's Opening Brief, courts have repeatedly emphasized the importance of a flexible approach to the stay analysis. That analysis does not employ a rigid application of rules, but rather an assessment of whether, under the circumstances of a particular case, it makes more sense for the parties and the judicial system that the second-filed action proceed ahead of the first-filed action.

Despite this, TS relies on *Kahn v. General Motors, Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) and cases citing it to suggest that the customer-suit exception applies only in the narrow circumstances in which a first-filed suit is against "mere resellers" of the accused product and the second-filed manufacturer suit promises to be completely dispositive of the reseller case.

---

product should be dragged through litigation when Cisco and TS can resolve their dispute directly in Cisco's declaratory judgment suit.

[2]    As explained in Section III herein, Cisco submits that adjudication of this motion should be held in abeyance pending resolution of jurisdictional challenges to Cisco's declaratory judgment action.

This was not the holding of *Kahn*, and TS's strained reading would frustrate the goals of judicial economy and fairness to the litigants that the customer-suit exception seeks to promote.

In *Kahn*, the district court granted General Motors' motion to stay an action against it in favor of a declaratory judgment action filed by Motorola. Unlike most cases in which the customer-suit exception is applied, however, Motorola was not the manufacturer of the accused device. It was a supplier of technology used by General Motors in making the accused device. *Kahn*, 889 F.2d at 1081. Thus, although General Motors was a customer with respect to certain technology, it was actually the manufacturer of the accused device itself.

The Federal Circuit found the customer-suit exception inapplicable in that circumstance for reasons that do not apply here. The Court found that a stay of a so-called customer suit was not warranted because the same issues would have be relitigated in that suit even after the second-filed suit was resolved. *Id.* Indeed, because Motorola agreed that its technology alone could not infringe the patent claims, the patent holder would have to litigate the question of liability for infringement by General Motors for the products it manufactured whether Motorola's suit went forward or not. Thus, a stay of the case against General Motors would do little to streamline the proceedings—questions of liability and damages would have to be litigated in the General Motors case in any event.[3] In that circumstance, the Federal Circuit

---

[3] TS's reliance on *Tegic Comm. Corp. v. Board of Regents of the Univ. of Texas Sys.*, 458 F.3d 1335 (Fed. Cir. 2006), and *Air Prods. & Chemicals, Inc. v. MG Nitrogen Servs, Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001), is misplaced for the same reasons. In *Air Prods. & Chemicals*, just as in *Kahn*, this Court declined to apply the customer-suit exception where the manufacturer supplied equipment that was a part in the units that were alleged to infringe. 133 F. Supp. 2d at 357. So too in *Tegic*. There, the Court found "it would not be demonstrably more efficient" to stay the customer suit because, among other things, that the manufacturer that filed the declaratory judgment suit was not the only source for the software used in the accused cellular phones. 458 F.3d at 1343.

held that staying the case against General Motors simply would not serve the interests of judicial economy and efficiency for the parties. *Id.* at 1081-82.

Indeed, none of the cases that TS has cited suggest—much less hold—that a patentee should be permitted to defeat application of the customer-suit exception merely because it would prefer to try to seek damages—or settlements—from multiple customers than from the actual maker and seller of the accused product. TS's preference to go after a long list of customers instead of resolving this dispute once and for all is simply not cognizable. The very rationale of the customer-suit exception is to prevent the unfairness and inefficiency created by litigating against a parade of customers. *See Ricoh Co. v. Aeroflex, Inc.*, 279 F. Supp. 2d. 554, 558 (D. Del. 2003) (noting that the customer-suit exception recognizes this inefficiency and acknowledges that patentees often elect to sue customers rather than the manufacturer in order to intimidate those customers). TS's attempt to evade the exception cannot be supported.

In fact, since *Kahn,* courts have applied the same central analysis for cases involving the customer-suit exception—will a stay of the first-filed suit promote fairness and efficiency. In considering that question, courts have found the exception to apply broadly to cases where, unlike *Kahn*, a stay of the customer suit in favor of a manufacturer suit promises to streamline the proceedings. In such cases, the analysis is—and must be—whether principles of fairness and good case management require a stay of the customer suit. As the Federal Circuit recognized in *Katz*, the customer-suit exception applies where the manufacturer suit will resolve "major issues before the court, including patent infringement, patent validity and [the plaintiff's] capacity to sue" as to the customers, even if additional issues remain for the customer suit. *Katz*, 909 F.2d at 1464. Courts—including this one—have held this again and again.

5

For example, in *Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*, 2004 WL 1554382, at *2-*3 (D. Del. May 13, 2004), this Court stayed infringement suits against customers despite the patentee's assertions that "a stay as to the [customers] would not simplify the issues in this case" and would "'substantially delay' its right to adjudicate its claims against" the customers. *Id.* at *2. This was because resolution of patent validity and infringement "prior to proceeding against the [customers] would surely simplify this case" and may "avoid piecemeal litigation altogether." *Id.* at *2, *3. As to the remaining issue—the patentee's damages claims against the customers—the Court found that the supposed prejudice imposed by a short delay was speculative, at best, and that any prejudice did not "outweigh the remaining factors in favor of granting a stay." *Id.* at *2.

Similarly, in *Ambrose v. Steelcase, Inc.*, 2002 WL 1447871, at *6-*7 (N.D. Ill. July 3, 2002), the Court severed and stayed patent infringement claims against a reseller, Office Concepts, Inc. ("Concepts"). In doing so, the Court rejected the patentee's allegation that a stay would prejudicially delay resolution of damages issues unique to the reseller defendant. The Court found that resolution of claims against the manufacturer would simplify the customer-suit:

> Concepts is not in a position to defend the infringement claims, and *if [the manufacturer] prevails on those claims, Concepts will be relieved of the expense of litigation. On the other hand, should plaintiffs establish their infringement claims in the [the manufacturers' action], the case against Concepts will in all likelihood settle, and if not, it can go forward . . . on damages issues only.* This is hardly different from a simple bifurcation. Accordingly, the motion to sever and stay appears to serve "the just, speedy and inexpensive" disposition of this litigation.

*Ambrose*, 2002 WL 1447871, at *7 (all emphasis added unless otherwise noted) (footnote omitted).

In *Ricoh*, this Court applied the customer-suit exception to transfer a customer case to California. 279 F. Supp. 2d. at 557-78. The customers there were not "mere resellers" of the accused device. Rather, "Ricoh's infringement claims against the defendants are **fundamentally claims against the ordinary use of Synopsys' Design Compiler**" in the customer defendants' own products. *Id.* The Court found that the goals of judicial economy and efficiency promoted by the customer-suit exception were met because "the California court's determination regarding infringement and validity of the '432 patent will efficiently dispose of the infringement issues regarding Synopsys' customers in this case." *Id.* Ultimately, "under Federal Circuit [precedents that] a manufacturer's declaratory judgment suit should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products," the Court found the customer-suit exception trumped the first-filed rule. *Id.* (citing *Katz*, 909 F.2d at 1464).

And in *Honeywell Int'l Inc. v. Audiovox Comm. Corp.*, 2005 WL 2465898, at *3-*4 (D. Del. May 18, 2005), this Court applied the customer suit exception to stay suits against customers of liquid crystal displays ("LCDs"). Those customers were not merely pass-though "resellers" of the LCDs, but rather, were companies that were using the manufacturers' LCDs as components in consumer electronics. *Id.* at *1. Finding that "liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture," the Court concluded that "dealing with the manufacturers first is the fairest and most efficient way to proceed." *Id.* at *3. Ultimately, the Court found that "a stay would not unduly prejudice [the patentee and] will vastly simplify the issues and trial of the case against the manufacturer defendants." *Id.*

All of these cases reflect a common thread—that the customer-suit exception serves as a vehicle to promote fair and efficient case management where a stay is likely to streamline the issues and promote judicial economy.[4] In deciding whether a stay promotes those objectives in a particular case, courts do not apply rigid rules, but rather, consider how the principles and goals underlying the customer-suit exception can best be served. As explained below, there is little dispute that, on the merits, a stay is best way to achieve them here.

### B.    Under The Correct Interpretation Of The Customer-Suit Exception, This Case Should Be Stayed

#### 1.    A Stay Would Streamline These Proceedings

TS does not dispute that major issues such as non-infringement of the '526 patent by Cisco's TelePresence product line and validity of the '526 patent may be resolved by Cisco's declaratory judgment action. Instead, TS's asserts that its *damages* claims may be different against Cisco customer defendants than against Cisco and, thus, that a stay would not serve judicial economy. Opposition at 6-7. As recognized in the cases discussed above, this argument does not meaningfully detract from the streamlining effect a stay would have on these proceedings.

As explained in Cisco's Opening Brief, the purpose of Cisco's declaratory judgment action is to obtain a decision on the merits of a dispute over Cisco's products between the real parties in interest, Cisco and the parties asserting the '526 patent, without needlessly

---

[4]    Applying the same analysis in the converse, this Court has declined to apply the customer-suit exception where a stay of the customer suit would not promote efficiency and streamline the issues. For example, in *Dentsply Int'l, Inc. v. Kerr Manufacturing Co.*, 734 F. Supp. 656 (D. Del. 1990), this Court denied the customer's request for a stay where the customer was the sole reseller of the accused product. *Id.* at 660. There, the gains in judicial economy and administration understandably associated with staying claims against multiple customer-defendants obviously could not be achieved by staying an infringement claim against the lone customer of the manufacturer's product. *Id.* That case has no application here, where TS has sued eight of Cisco's customers.

dragging Cisco's customers into the fray.  TS does not dispute that a judgment that the '526 patent is invalid would eliminate its claims altogether and would allow Cisco and its customers to rightfully continue their actions with respect to the Cisco TelePresence product line without the specter of TS's allegations.  Similarly, TS does not dispute that a finding that Cisco's TelePresence products do not infringe would be binding on TS (and on the patent owner Margalla, which is not a party to this action).  Indeed, a judgment of invalidity or non-infringement in the Northern District of California would relieve this Court from adjudication of those claims, or at least sharply narrow the disputed issues concerning those claims.  TS does not dispute that the outcome of Cisco's declaratory judgment action will have a direct impact on this case.

TS's only argument for why a stay of this case in favor of Cisco's declaratory judgment action would not streamline these proceedings is that TS may have damages claims against Cisco's customers that it does not have against Cisco itself.  There are significant flaws with this argument.

First, TS suggests that it will not attempt to seek the same "cost-savings" type damages from Cisco in the declaratory judgment action.  This is not simply credible.  The *Georgia-Pacific* framework for patent damages provides that a reasonable royalty analysis is based on consideration of fifteen factors including, "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results" and "[t]he nature of the patented invention . . . and the benefits to those who have used the invention."  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified on other grounds by Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).  There is no question that TS will try to use

those factors, whether expressly or implicitly, to obtain the same cost-savings type damages from Cisco as it would from Cisco's customers. Indeed, in its Opposition, TS ties Cisco to such purported damages: "*Cisco* markets the accused products to potential purchasers as a cost-savings mechanism." Opposition at 6.

Moreover, as Cisco explained in its Opening Brief, even if TS could recover damages against Cisco, the doctrine of exhaustion would prevent a double recovery against Cisco's customers. S*ee, e.g., Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1303 (Fed. Cir. 2007) (noting that "a patentee may not sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damages fully compensate the patentee for infringement by users"); *see also Delphi Corp. v. Automotive Technology International, Inc.*, 2008 WL 2941116, at *5 (E.D. Mich. Jul. 25, 2008) ("Delphi as manufacturer is the natural defendant because any resolution vis-a-vis Delphi would be global as far as its PODs customers and, for that matter, ATI would be concerned."). Thus, even in the unlikely event that TS were to prevail in proving infringement and validity in the Northern District of California action, a stay of this action would not prejudice TS's damages claims against Cisco's customers because TS may not be entitled to further relief.

Second, TS assumes that these proceedings will not be streamlined if some damages-related issues relating to the customers were to remain after the California declaratory judgment action is resolved. Not so. As explained above, Courts regularly recognize the streamlining effect of staying customer suits even where certain issues, such as damages, remain for adjudication when the stay is lifted. *See Commissariat*, 2004 WL 1554382, at *2-*3 (noting that the need to address remedial arguments in the retailers' action may be eliminated by findings of non-infringement or invalidity in the manufacturers' action). That makes perfect sense. By

10

allowing the manufacturer suit to proceed ahead of the customer suit, the Court substantially increases not only the chance that major issues will be resolved entirely by the manufacturer suit but also that the parties will settle once those major issues have been resolved. *See Ambrose*, 2002 WL 1447871, at *7 (granting stay of the customer action based in part on the likelihood of settlement after resolution of the manufacturer action).

> **2.    TS Does Not Meaningfully Dispute That The Northern District Of California Is The More Appropriate Forum For Adjudication Of This Dispute**

The balance of convenience of the forum is routinely considered in adjudicating a stay request.[5]  TS suggests that the Northern District of California is not the best forum for adjudication of the parties' dispute because although it "may be more convenient for Cisco" it would inconvenience the other parties. Opposition at 10. But TS has offered no actual evidence of inconvenience to any of the parties, including TS itself.  Furthermore, none of the most important witnesses – including the patent's inventors and owner and Cisco's employees that developed the accused products – reside in or near the District of Delaware.  Moreover, TS has made no effort to show that the inventors prefer to conduct discovery and litigate this case thousands of miles from their residences in California or will even cooperate with discovery in the District of Delaware.

As established in Cisco's Opening Brief, the Northern District of California is home to the inventors named on the patent (Mark Kent and Saqib Jang) and to the patent owner,

---

[5]    The analysis of a motion to stay shares common considerations with a motion to transfer, including "convenience" factors such as the availability of the important witnesses and evidence.  *See e.g., St. Clair Intell. Prop. Consultants, Inc. v. Mirage Sys., Inc.*, 419 F.Supp.2d 620, 624 (D. Del. 2006).  Although a motion to transfer may be appropriate in the future, Cisco's instant motion seeks a stay to streamline this case and avoid unnecessarily dragging its customers into a dispute in which Cisco is the real-party-in-interest.

Margalla, yet each of these key (and likely necessary and indispensable) parties is notably absent from the Delaware case. Opening Brief at 2. Under similar circumstances, in *St. Clair Intell. Prop. Consultants, Inc. v. Mirage Sys., Inc.*, 419 F.Supp.2d 620, 624 (D. Del. 2006), this Court granted a stay pending resolution of a California suit because, among other reasons, "[t]he inventors are not parties to the action in this Court [and] this forum is also highly inconvenient for the inventors and others based in California." *See also Arrow Comm. Labs., Inc. v John Mezzalingua Assoc., Inc.*, 2005 WL 2786691, at *3 (D. Del. Oct. 26, 2005) (granting motion to transfer because, in part, "the majority of the witness with discoverable information also are located in and around" the transferee forum). Similarly, in *William Gluckin & Co., Inc. v. Int'l Playtex Corp.*, 407 F.2d 177, 180 (2nd Cir. 1969), the Court of Appeal affirmed the district court's stay of the first-filed Georgia action in favor of the second-filed New York case because, in part, "the alleged inventor ... resides in New Jersey" and "witnesses who have knowledge of the patent reside in and about New York City."

Furthermore, the availability of compulsory process over the inventors in California, but not here, is another critical reason to stay this case while the California action proceeds. *See, e.g., Sherwood Med. Co. v. Ivac Med. Sys., Inc.*, 1996 WL 700261, at *5 (D. Del. Nov. 25, 1996) (transferring case because, in part, "two of the three inventor ... are not within the subpoena power of this Court" whereas these "critical witnesses are subject to the compulsory process power" in California); *In re Genentech, Inc.*, 2009 WL 1425474, at *6 (Fed. Cir. May 22, 2009) (finding district court abused its discretion in refusing to transfer case to the Northern District of California because, in part, "a substantial number of witnesses [are] within the subpoena power of the Northern District of California [whereas] no witness [ ] can be compelled to appear in the Eastern District of Texas"). In the California case, live inventor

testimony—an essential component of discovery and any trial—can be secured by subpoena. However, in this case, there is no mechanism to secure live trial testimony from the named inventors, and TS has made no indication, let alone submit declarations confirming, that the named inventors will voluntarily appear for deposition and trial.[6]  In fact, at least one of the named inventors – Mark Kent – has refused to be involved and will not cooperate in the litigation.   Specifically, during discussions between counsel in the California action about discovery on pending motions to dismiss for lack of jurisdiction, counsel for TS and Margalla contacted Mr. Kent and learned that he does not want to be involved in the litigation and will not cooperate voluntarily in the California case.  Mr. Kent is within subpoena power in California, and should that case go to trial, Mr. Kent, may be compelled to testify at trial.  However, Mr. Kent – as well as any other uncooperative California witnesses – is not within the subpoena power of the District of Delaware and could not be compelled to testify at trial if they refuse to cooperate.  This, too, favors staying the Delaware case; otherwise, critical witness testimony will likely be unobtainable and, thereby, greatly prejudice Cisco and its customers.

> The Northern District of California is also home to Cisco, its employees who are most likely to have relevant information about the accused TelePresence products, and technical and business documentation most likely to be relevant to TS's infringement claims are located primarily at Cisco's headquarters in the Northern District of California.  *See* Opening Brief at 2; Stucki Decl. at ¶¶ 2-4.  In short, most of the key evidence relating to the '526 patent (including whether it is valid) and to the accused products (including whether they function in a way that infringes the '526 patent) is located in the Northern District of California.

---

[6]    Yet even if TS could assure that the inventors would appear at trial that "is not the same as having them amenable to the subpoena power of the trial court."  *Sherwood Med. Co.*, 1996 WL 700261, at *5.

In contrast, this district has no particular interest or connection to the parties' dispute. TS does not assert that a single piece of evidence—whether a document or a witness—is located in this district (or anywhere other than California). TS does not assert that any of the defendants have performed acts of alleged infringement in this district. TS does not even assert that it itself has any connection at all to this district other than its choice to bring this suit here. Indeed, other than the fact that Delaware is the state of incorporation for some—but not all—of the customer defendants, TS failed to show any connection between this district and this dispute at all. Opposition at 10-11.

Instead, TS suggests that Cisco selfishly seeks to move the case to the Northern District of California for its own convenience and to the inconvenience of the other parties. There is simply no support for that. To be sure, the Northern District of California is more convenient for Cisco. But it more convenient for *all* the parties for the same reason—the most relevant evidence is located in the Northern District and that forum is best suited to resolution of this dispute.[7] Moreover, it would be just as easy for TS (a Texas LLC with substantial ties to California) and its lead counsel (based in St. Louis, Missouri) to travel to California as to Delaware. Thus, TS does not identify any tangible inconvenience to the parties that would result from adjudication of parties' dispute in California. And it certainly would be more convenient to

---

[7] TS attempts to distinguish several cases cited by Cisco in which the balance of convenience of fora was found to support a stay of a customer suit. Opposition at 11-12. TS's attempt to distinguish these cases suffers from the same unduly-narrow interpretation of the case law as TS's other arguments. Although the particular facts of where defendants were incorporated or where witnesses resided in those cases may vary from this case, the principles underlying those cases is plainly applicable here. The balance of convenience and interest of the two fora is an important part of the stay analysis, and where that balance tips decidedly in favor of the second-filed action, the first-filed action should be stayed. Opening Brief at 14-17.

Cisco's customers who are named as defendants to have TS and Cisco – the real parties in interest – litigate their dispute in California than for those customers to have to litigate here.

**III.    THE COURT SHOULD HOLD THIS MOTION IN ABEYANCE WHILE JUDGE WHITE RESOLVES JURISDICTIONAL CHALLENGES TO THE NORTHERN DISTRICT OF CALIFORNIA ACTION**

A few days after filing its Opposition, TS moved to dismiss Cisco's declaratory judgment complaint in the Northern District of California case for lack of personal jurisdiction. On the same day, TS's co-defendant Margalla, which owns the '526 patent, moved to dismiss Cisco's declaratory judgment complaint for lack of subject matter jurisdiction, claiming it has transferred to TS all substantial rights under the '526 patent.

Whether Margalla no longer has substantial rights in the patent as it claims is a threshold question relevant to this case as well as the California action.  If discovery in the California action reveals that Margalla has not transferred all substantial rights in the patent to TS, a necessary party (Margalla) may be missing from this case.  *See e.g., Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (finding exclusive licensee lacked all substantial rights in the patent (such that it could sue alone) and that the owner must be joined to maintain suit).  In a matter of weeks, ownership discovery will be completed in the California case and the pending motions fully briefed.  If Judge White concludes that TS does not hold all substantial rights in the patent, and therefore does not stand in the shoes of a patent owner, this Court will not have jurisdiction over the case because a necessary party (Margalla) is not a plaintiff in this case.  Thus, in the interests of efficient case management and preservation of judicial resources, the Court should wait until the threshold jurisdictional issues are resolved in California before resolving whether to stay this case.

TS and Margalla have stipulated to a schedule and plan for targeted fact discovery on these jurisdictional issues.  *See* Exhibit A [Stipulation to Enlarge Time for Cisco's Response

to Defendants' Motions to Dismiss For Lack of Personal Jurisdiction and Subject Matter Jurisdiction]; Exhibit B [Order Granting Stipulation]. As soon as the agreed discovery is concluded, Judge White will then hear both motions to dismiss. *Id.*

Cisco respectfully requests that this Court defer a decision on this motion until TS's and Margalla's motions to dismiss Cisco's declaratory judgment action have been decided. There is little question that resolution of TS's jurisdictional challenge in California may influence this Court's resolution of this motion.  If Cisco prevails on jurisdiction—which it believes it will—TS's argument that a stay of this action is not appropriate because there is no personal jurisdiction over it in California will be moot. Opposition at 12.  Moreover, resolution of Margalla's motion to dismiss for lack of subject matter jurisdiction will determine whether Margalla retains substantial rights to the '526 patent and whether, as a result, it is a necessary party to any action relating to that patent.  In any case, Cisco believes that concerns of judicial authority and economy would be served by awaiting Judge White's threshold jurisdictional determination before this Court determines how to proceed with this action.

## IV.    CONCLUSION

For the reasons set forth in its opening brief and herein, Cisco respectfully requests that the Court grant its motion to stay this case.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant
Cisco Systems, Inc.*

OF COUNSEL:

Matthew D. Powers
Edward R. Reines
Sonal N. Mehta
Rip Finst
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

June 19, 2009
2956740

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2009, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

Joelle E. Polesky, Esquire
SMITH, KATZENSTEIN & FURLOW LLP

I further certify that I caused copies of the foregoing document to be served on

June 19, 2009, upon the following in the manner indicated:

Joelle E. Polesky, Esquire                          *VIA ELECTRONIC MAIL*
SMITH, KATZENSTEIN & FURLOW LLP                       *and HAND DELIVERY*
800 Delaware Avenue
10th Floor
Wilmington, DE  19801

Anthony G. Simon, Esquire                           *VIA ELECTRONIC MAIL*
Timothy E. Grochocsinski, Esquire
THE SIMON LAW FIRM, P.C.
701 Market Street – Suite 1450
St. Louis, MO  63101


Jack B. Blumenfeld (#1014)