[C.A. No. 09-200, Doc. No. 13, 17, 23, 38, 50]
[C.A. No. 09-632, Doc. No. 45]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELECONFERENCE SYSTEMS,<br><br>                    Plaintiff,<br><br>     v.<br><br>PROCTOR & GAMBLE<br>PHARMACEUTICALS, INC.,<br><br>                    Defendant. | Civil No. 09-200 (JBS/JS)<br>District of Delaware |
| TELECONFERENCE SYSTEMS,<br><br>                    Plaintiff,<br><br>     v.<br><br>HEWLETT-PACKARD CO., et al.,<br><br>                    Defendants. | Civil No. 09-632 (JBS/JS)<br>District of Delaware |

**O P I N I O N**

This Opinion addresses whether these consolidated patent infringement cases should be litigated in the District of Delaware or the Northern District of California.  For the reasons to be discussed the Court finds that these cases should be transferred to California.[1]

This matter is before the Court on the following motions:

---

[1]On November 12, 2009, the Court entered an Order pursuant to Fed. R. Civ. P. 42(a) consolidating these actions for discovery and case management purposes only.

"Motion to Stay" [C.A. No. 09-200, Doc. No. 13] filed by defendant Cisco Systems, Inc. ("Cisco"), "Motion to Stay Proceedings" [Doc. No. 17] filed by the Cisco defendants[2], "Motion to Stay (Renewed)" [C.A. No. 09-200, Doc. No. 23] filed by the Cisco defendants, "Motion to Transfer Case to United States District Court for the Northern District of California" [C.A. No. 09-200, Doc. No. 38] filed by Cisco, "Motion to Transfer Case to Northern District of California" [C.A. No. 09-200, Doc. No. 50] filed by the Cisco defendants, and "Motion to Stay and Transfer Venue" [C.A. No. 09-632, Doc. No. 45] filed by Hewlett-Packard Company ("H-P"), and joined in by all defendants in the case. [C.A. No. 09-632, Doc. No. 53].  Plaintiff opposes all of these motions.  The Court held oral argument on all motions on November 13, 2009.

**Background**[3]

Plaintiff filed its complaint on March 27, 2009, against eight of Cisco's customers alleging infringement of United States Patent

_____

[2]The Cisco customers or defendants include Enbridge Holdings (US) LLC ("Enbridge"), Proctor & Gamble Pharmaceuticals Inc., HSBC USA Inc., Baxter Healthcare Corporation, Applied Materials Inc., Wachovia Corporation, Staples Inc. and Cabela's Incorporated.

[3]These lawsuits concern the TelePresence product or system. This is a term used to refer to high visual conference systems where the goal is to make it look like you are actually talking to someone, life size, or on an LCD screen, in a conference room setting.  See Transcript of November 13, 2009 Oral Argument ("Tr.") at 9. Plaintiff claims the patent in suit deals with a system and that Cisco and H-P sell components of the system and/or the entire system.  Id. at 10.

No. 6,980,526 ("526 patent"). [C.A. No. 09-200, Doc. No. 1 ("Cisco action")].[4]  Plaintiff alleges the Cisco defendants made, used, sold, offered for sale, and imported apparatuses that infringed its '526 patent.  After Cisco learned about plaintiff's complaint it filed a declaratory judgment action in the United States District Court for the Northern District of California (Dkt. No. CO9 01550 PVT) naming plaintiff and the owner of the '526 patent, Margalla Communications, Inc. ("Margalla").[5]  That case was filed on April 8, 2009, thirteen days after plaintiff filed the Cisco action.  In the California action Cisco is seeking a declaratory judgment that Cisco and its customers did not infringe plaintiff's '526 patent and the '526 patent is invalid.  On April 17, 2009, Cisco filed its motion to intervene and to stay the Cisco action.  The Cisco defendants joined Cisco's motion to stay on April 20, 2009.  On April 4, 2009, plaintiff filed an amended complaint adding Cisco as a defendant.  [C.A. 09-200, Doc. No. 18].[6]  On September 23, 2009, Cisco filed a motion to transfer the case to the United States District Court for the Northern District of California.

─────────────

[4]Cisco was not a named defendant in plaintiff's original complaint.

[5]Plaintiff and Margalla filed motions to stay and transfer in California similar to the motions filed in this case.  They argue these Delaware actions should proceed before Cisco's second-filed declaratory judgment action.  The parties asked the California court to defer ruling on their motions until defendants' motions in these cases are decided.

[6]Cisco's joinder mooted its request to intervene.

On August 24, 2009, plaintiff filed a separate action ("H-P Action") against H-P, AstraZeneca Pharmaceuticals LP, Dow Chemical Company, Advanced Micro Devices Inc., Dreamworks Animation SKG Inc., Marriott International Inc., and American International Group Inc. (collectively "H-P defendants") also alleging infringement of its '526 patent.[7]   These defendants (except H-P) are all H-P customers.  On November 3, 2009, the H-P defendants filed their own motion to stay and transfer venue to the Northern District of California.

Plaintiff is a Texas Limited Liability Company with its principal place of business in California.   While no formal corporate documents have been produced, defendants allege that plaintiff is a subsidiary or division of Acacia Research Corporation ("Acacia").   Acacia licenses and enforces patents. Acacia is a Delaware corporation with its principal place of business in California.  Defendants further represent that the sole member of plaintiff is Acacia Patent Acquisition LLC ("APA").  APA is also a Delaware Corporation with its principal place of business in California.  The inventors of the '526 patent are Saqib Jang and

---

[7]On September 9, 2009, plaintiff voluntarily dismissed Marriott as a defendant. [C.A. No. 09-632, Doc. No. 13]. On November 11, 2009 [Doc. No. 59], plaintiff filed its first amended complaint naming AIG Financial Products Corporation. American International Group Inc. was voluntarily dismissed on November 6, 2009. [Doc. No. 56].

Mark Kent.   Jang and Kent reside in the Northern District of California.   Margalla, the patent owner, is a California corporation whose sole shareholder is Jang.   Margalla licensed to APA the right to enforce the '526 patent.

Cisco is incorporated in California and has its headquarters in the Northern District of California.   In the Cisco action there are eight (8) customer defendants.   Five (5) defendants are incorporated in Delaware.   None of the defendants has their principal place of business in Delaware.   H-P is incorporated in Delaware and its headquarters is located in the Northern District of California.   The sales and marketing branch of the H-P product or system at issue is located the same District.   However, the product was designed and developed in Oregon.   H-P's customer support and installation functions are also managed from H-P's Oregon office.   Plaintiff sued five H-P customers.   All of these defendants are incorporated in Delaware.   Each of these defendants is either a California-based company or has an office in California.

In the first instance, Cisco argues the Delaware action (C.A. No. 09-200) should be stayed until the declaratory judgment action in California is decided.   Cisco argues the court should analyze a motion to stay by using a flexible approach by deciding if it makes "more sense" to the parties and the judicial system for the second filed action to go forward before the first-filed action.   Cisco

5

makes two arguments in support of its motion: (1) the first-filed action is a customer suit and the second filed action involves the manufacturer and (2) the California declaratory judgment suit will streamline the Delaware proceeding, and depending on the outcome, will moot it altogether.

Plaintiff opposes Cisco's motion to stay by arguing that when two lawsuits involving the same claim are filed in different jurisdictions, the first filed action is given preference. Plaintiff alleges that because Cisco is a defendant in the first filed lawsuit it could have brought a declaratory judgment claim in the Delaware action and therefore the customer suit exception is not applicable.   Plaintiff further alleges the customer suit exception does not apply here because (1) the Cisco defendants are not mere resellers and (2) the disposition of the second-filed or California suit is not dispositive of the first-filed or Delaware suit.

Alternatively, Cisco argues that if its motion to stay is denied, the Court should transfer the action to the Northern District of California.   Cisco also argues that California is the District with the closet connection with the dispute.   Cisco alleges the original case should have been brought in California against its customers.   Cisco argues that the court should sever and stay plaintiff's claim against Enbridge, the only defendant that California does not have personal jurisdiction over, and

transfer the remainder of the action to California.

Plaintiff contends that the District of Delaware is a more convenient forum because the majority of defendants are incorporated in Delaware and have significant ties to Delaware and the surrounding areas.   Plaintiff further argues that because Enbridge is not subject to jurisdiction in California the original claim could not have been brought in California.

H-P argues that the District with the closet connection to this patent dispute should decide the case because it will save the primary parties and all of the witnesses from the inconvenience of having to litigate in a forum that is far from where they reside. Thus, H-P argues the court should stay the proceedings to avoid unnecessary effort and expense.   H-P then argues that once the claims against the H-P customers are stayed, the claims against H-P should be severed and transferred to California.

In summary, plaintiff filed two lawsuits in Delaware to enforce the '526 patent.  The first lawsuit was filed on March 27, 2009 against the Cisco defendants.  Cisco was later joined in the case.  The second lawsuit was filed on August 24, 2009 against the H-P defendants.  Between the filing of the two lawsuits, but before Cisco was joined in the first filed lawsuit, Cisco filed a declaratory judgment action on August 4, 2009 in the Northern District of California against plaintiff and Margalla.   In the Cisco action, Cisco requests that the entire case be stayed while

its California litigation proceeds.  In the alternative, all defendants ask the Court to sever and stay the action against Cisco's and H-P's customers and transfer only Cisco and H-P to California.  If that fails, Cisco and H-P ask that the entire action be transferred to California.

**Discussion**

1.  **Cisco's Motion to Stay (C.A. No. 09-200)**

A court has the discretion to stay a case if the interests of justice so require. U.S. v. Kordel, 397 U.S. 1, 12 n. 27 (1970). In deciding whether to stay an action, the court must "weigh competing interests and maintain an even balance." Landis v. North Am. Co., 299 U.S. 248, 255 (1936).  When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is complete; and (4) whether a trial date has been set.  United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D.Del. 1991); Honeywell Int'l Inc. v. Audiovox Comms. Corp., C.A. No. 04-1337 (KAJ), et al., 2005 WL 2465898, at *2 (D.Del. 2005).

Cisco argues the first filed Delaware action should be stayed because the action is a customer suit and the second filed action in California is an action involving the manufacturer.  Therefore, Cisco argues, the customer suit action exception to the first filed

8

rule applies.

Generally, as a principle of sound judicial administration, when two suits are filed involving similar issues and similar parties, the first suit should have priority absent special circumstances. Air Products and Chems. Inc. v. MG Nitrogen Servs, Inc. ("Air Products"), 133 F. Supp.2d 354, 357 (D. Del. 2001). A stay of the first-filed suit is done to prevent a wrong or an injustice. Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989). In patent actions, courts have recognized two exceptions to the first-filed rule. The first exception is the customer suit action. The second exception is where forum shopping alone motivated the choice of sites for the first suit. Id.[8]

The customer suit action exception is used when the first suit is filed against a customer who is a mere reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods. Air Products, 133 F. Supp.2d at 357. This exception is based on the premise that the manufacturer has a presumed greater interest than does a customer in defending its products against charges of patent infringement. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737-38 (1st Cir 1977) (finding preference for a manufacturer's declaratory judgment action because the manufacturer was the true defendant); see also Kahn, 889 F.2d at 1081. The customer suit exception is applicable

---

[8]Cisco is not pursuing the "forum shopping" exception.

when the first suit is brought against the customer in a district where the manufacturer cannot be joined as a defendant. Kerotest Mfg. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 186 (1952).  When this situation arises, the manufacturer should be permitted to prosecute its declaratory judgment action elsewhere to protect itself and its clients. Id. (finding when the manufacturer could not have been named as a defendant in the first suit, it can prosecute a declaratory action against the patentee elsewhere); Air Products, supra (finding that because the manufacturer could have been named a defendant where the first suit was brought the exception did not apply).

Declaratory relief is intended to eliminate duplicative litigation as opposed to multiplying litigation. See Kerotest Mfg. Co., supra; Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93 (9th Cir. 1982).  Cisco's California lawsuit does not further this purpose.  In Pacesetter, the original suit was filed against the manufacturer in Florida.  Three days later, the manufacturer filed a declaratory judgment action in California alleging invalidity of the patent in the first suit.  The California court dismissed the second-filed action in favor of the first-filed Florida action noting the substantial similarities of both actions.  It explained that allowing both suits that involved identical claims would multiply litigation and fail to serve any judicial administrative purpose because the manufacturer was a party to the first suit.

10

Similarly, there is no impediment to Cisco litigating in Delaware since it is a defendant in the Cisco case.

Cisco argues that courts often stay the first-filed suit when that action is a customer suit and the second-filed action is an action involving the manufacturer. However, this typically occurs when the first suit is filed against a customer who is a reseller of the accused goods. Air Products, 133 F. Supp.2d at 357. This is not the case here because plaintiff alleges that Cisco's customers are not mere resellers but are direct infringers. In addition, first-filed suits are typically stayed only if the manufacturer who filed the second suit was not able to bring a claim in the first jurisdiction or was not a party to the first claim. This also has not occurred here.

Cisco's reliance on William Gluckin & Co. v. Int'l Playtex Corp., 407 F.2d 177 (2nd Cir 1969) is misplaced. In Gluckin, Playtex brought a patent infringement action against Woolworth in the Northern District of Georgia. After this filing Gluckin, the manufacturer of the challenged product sold by Woolworth, brought a declaratory judgment action against Playtex in the Southern District of New York. Gluckin was a New York corporation with its principal place of business in New York City. Further, Gluckin was not licensed to do business in Georgia and not subject to suit there. The court granted the motion to stay the Georgia action until the New York declaratory action was resolved. The Gluckin

11

decision is not analogous because Cisco is a party to plaintiff's original suit and Delaware has proper jurisdiction over Cisco.

Cisco's alternative arguments to justify a stay are also not persuasive. Cisco argues that a stay would simplify the issues for trial. Cisco argues that the outcome of its California action will simplify the pending claims and California is the more appropriate forum for the adjudication of this dispute because the primary parties and evidence relating to the dispute are all located in California. Cisco also argues that its motion to stay will not prejudice plaintiff because plaintiff has no real ties to Delaware and there is no legitimate reason to sue the Cisco defendants here. Lastly, Cisco argues a stay is warranted because this case is in its early stages and the judicial process will not be prejudiced if the case is stayed.

The Court rejects Cisco's argument that the outcome of the California action will simplify the pending claims to such an extent that plaintiff's Delaware action should be stayed. The Federal Circuit held that the first-filed suit can be stayed if it would resolve all charges against the customers in the stayed suit, including liability for damages. <u>Kahn</u>, 889 F.2d at 1078. This is not the case here. In <u>Kahn</u>, the patent holder sued General Motors for infringement of a patent covering AM stereo receivers. Motorola, the manufacturer of integrated circuit boards used in the receivers, filed for a declaratory judgment that Kahn's patent was

12

invalid and that neither Motorola nor the manufacturers of the stereo receivers incorporating Motorola's parts infringed. General Motors moved to stay its suit pending the outcome of the Motorola suit, but the court found the customer suit exception was not applicable because the second filed action would not completely resolve the issues between the parties. Id. at 1082. The court found that because General Motors did not agree to be bound by a decision entered against the manufacturer the case would not be stayed. Id. Here, the Cisco defendants do not agree to be bound by a decision in plaintiff's favor in California. Therefore, Cisco's California declaratory judgment action will not be outcome determinative of plaintiff's Delaware action.

Further, there is a legitimate reason why plaintiff chose to litigate in Delaware since Enbridge does not have sufficient contacts with California to be subject to its jurisdiction. Thus, plaintiff's complaint naming Enbridge could not have been originally filed in California. However, when plaintiff originally filed its claim, jurisdiction existed over all of the Cisco defendants in Delaware. Courts should be presented with "rare or extraordinary circumstances, inequitable conduct, bad faith or forum shopping" to depart from the first-filed rule. E.E.O.C. v. Univ. of PA, 850 F.2d 969, 972 (3d Cir. 1988). These circumstances do not exist here. Accordingly, the Court finds Cisco's arguments unpersuasive and concludes that Cisco's reliance on the customer

13

suit exception is misplaced.

In addition to the non-applicability of the customer suit exception to the first-filed rule, when the Court applies the <u>Landis</u>, <u>supra</u>, factors, the result is the same.  First, a stay would prejudice plaintiff's choice of forum because plaintiff has a right to litigate in the forum of its choice.  Plaintiff chose to sue Cisco's customers in Delaware and a stay would not allow plaintiff to proceed against the customers.  In addition, the ultimate resolution against Cisco's customers would be prejudiced because it would be postponed until the California action is decided.  Second, a stay would not simplify the issues.  A verdict in California would not be binding on Cisco's customers in this case.  Therefore, a stay may lead to a duplicate trial which would result in inefficient use of the court's time.[9]  Thus, Cisco has failed to demonstrate that a stay of the Cisco action is warranted.  Therefore, Cisco's motion to stay is denied.

2. **Request to Transfer Cisco and its Customers to the Northern District of California (C.A. No. 09-200)**

Cisco and its customers rely upon 28 U.S.C. §1404(a) for their transfer request.  Pursuant to this statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or

---

[9]Factors three and four in <u>Landis</u> are not relevant to the case.

division where it might have been brought."[10]   Factors a court should consider in its §1404(a) analysis include, but are not limited to: (1) plaintiff's forum preference as manifested in the original choice, (2) defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, (6) the location of books and records, (7) the enforceability of the judgment, (8) practical considerations that could make the trial easy, expeditious or inexpensive, (9) the relative administrative difficulty in the two fora resulting from court congestion, (10) the local interest in deciding local controversies at home, (11) the public policies of the fora, and (12) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara v. State Farm Inc. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).

The Court's §1404(a) analysis must be done on "an individualized case-by-case consideration of convenience and the interests of justice." Motorola, Inc. v. Research in Motion Ltd. "Motorola"), Civ. No. 08-104-SLR, 2008 WL 3925278, at *1 (D. Del. Aug. 26, 2008) (citations omitted).  One general principal that guides the Court's analysis is that the moving parties have the burden to show that a change of venue is appropriate. Id. In addition, the movants must "establish that the balance of

_____

[10]All parties agree that plaintiff's lawsuits could have been filed in the Northern District of California except for the claim against Enbridge.  This issue is addressed infra.

convenience of the parties and witnesses strongly favors the
defendants." <u>Bergman v. Brainin</u>, 512 F. Supp. 972, 973 (D. Del.
1981)(citing <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir.
1970)); <u>Motorola</u>, at *1.   In fact, ordinarily a court will give
"paramount consideration" to a plaintiff's choice of forum.  <u>See</u>
<u>Shutte</u>, 431 F.2d at 25.  The deference given to plaintiff's choice
of forum applies as long as the plaintiff selected the forum for a
legitimate reason.   <u>Motorola</u>, at *1.[11]   But, however, under
§1404(a), absent a legitimate, rational reason, if the plaintiff
chooses to litigate away from his or her "home turf," the
defendant's burden is lessened.  <u>Trilegiant Loyalty Solution, Inc.</u>
<u>v. Maritz, Inc.</u>, C.A. No. 04-360 (JJF), 2005 WL 441077, at *2
(D.Del. Feb. 15, 2005)(citation omitted).   Under §1404(a) "home
turf" refers to a corporation's principal place of business.  <u>Id</u>.

Having summarized the general principles to be applied, the
Court will separately analyze defendants' transfer request in the
Cisco and H-P actions.  Before this is done, however, the Court must
address a preliminary issue.  The party moving for transfer bears
the burden of proving that the action could have been brought in the
transferee district in the first instance.  <u>Waste Distillation Tech,</u>

_____

[11]The Court does not find that plaintiff filed its lawsuits
in Delaware for an illegitimate reason.  Albeit, the Court
recognizes that defendants argue Delaware has no meaningful
connection to plaintiff's dispute.  The fact that defendants
disagree with plaintiff's strategic decision to file its
complaints in Delaware does not equate to a finding that the
complaints were filed for an illegitimate purpose.

<u>Inc. v. Pan Am. Res. Inc.</u>, 775 F. Supp. 759, 762 (D.Del. 1991). Plaintiff argues that because Enbridge may not be sued in California that this bars transfer of the action.   However, the lack of jurisdiction over Enbridge in California is not an insurmountable obstacle.   <u>See</u> <u>Sunbelt Corp. v. Noble, Denton & Associates, Inc.</u>, 5 F.3d 28, 33 (3d Cir. 1993)(citation omitted)(venue defects as to a party whose portion of the action has been severed does not bar transfer of the remainder of the action).   The Court finds that the claim against Enbridge should be severed and stayed while the remainder of the case is transferred. <u>See</u> <u>LG Elecs Inc. v. First Int'l Computer, Inc.</u>, 138 F. Supp. 2d 574, 584 (D.N.J. 2001)(citations omitted), ("[v]enue defects as to a party whose portion of the action has been severed or settled does not bar transfer of the remainder of the action....  The rationale for this procedure is that courts should sever peripheral claims when the 'administration of justice would be materially advanced'"). Severance is an appropriate remedy here since Enbridge is not an essential party.   Enbridge is only one of nine defendants in the Cisco action.   In addition, no one has argued that there are any key Enbridge witnesses, documents or evidence insofar as the relevant patent infringement and invalidity issues are concerned.   In view of the fact that the Court finds that the convenience of the parties strongly favors transfer (discussion <u>infra</u>), and Enbridge plays no meaningful role in the determination of the key infringement and

17

invalidity issues in the litigation, plaintiff is not prejudiced by severing and staying the claim against Enbridge.  The equities favor this relief.[12]

      a.   Application of the Jumara Factors to the Cisco Action

         (1)  Choice of Forum

Given that deference is given to plaintiff's choice of forum, the §1404(a) analysis of the parties' choice favors plaintiff. However, plaintiff's preference to litigate in the District of Delaware is not unshakeable.  Delaware courts are not hesitant to transfer a first-filed patent action to a more appropriate forum if warranted by the facts of the case.  See Motorola, supra; Ricoh Co. v. Aeroflex, Inc., 279 F. Supp. 2d 544 (D. Del. 2003); Affymetrix v. Syteni, 28 F. Supp. 2d 192, 199 (D.Del. 1998)(emphasis in original)("under the balancing test inherent in any transfer analysis, the weaker the connection between the forum and either the plaintiff or the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer").  The Federal Circuit agrees this should be done.  In re Genentech, Inc. ("Genentech"), 566 F.3d 1338 (Fed. Cir. 2009 (issuing a writ of mandamus directing the Eastern District of Texas to vacate its order denying petitioners' motion to transfer venue to the Northern District of California).  See also Micron Tech., Inc. v. Mosaid

---

    [12] As an aside, the Court notes that Enbridge agreed to voluntarily participate in the California litigation and to waive its objections to personal jurisdiction. See Tr. at 22-23, 56.

<u>Techs., Inc</u>., 518 F.3d 897, 904 (Fed. Cir. 2008 ("[t]he first-filed suit rule ... will not always yield the most convenient and suitable forum").   In addition, as discussed, the deference given to plaintiff's forum choice is lessened because plaintiff is not litigating on its "home turf."

(2)   <u>Where the Claim Arose</u>

In the context of this action the "where the claim arose" factor is not entitled to any significant weight because there is no one "situs" of plaintiff's infringement claims.   The claims against Cisco and its customers arise out of their use of Cisco's product in different states including Delaware and California. Since Delaware and California cannot stake a claim to being the situs of plaintiff's claim, this factor is neutral.   See <u>Affymetrix v. Synteni, Inc.</u>, 28 F. Supp. 2d at 201 (the fact that the claim arose elsewhere carries no weight in the balance of convenience analysis).

(3)   <u>Convenience of the Parties and Witnesses and the Location of Relevant Evidence</u>

The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the §1404(a) analysis.   The Court's analysis of these factors weighs heavily in favor of transferring the action to California.

In order to meaningfully address the §1404(a) analysis the Court must identify the "real underlying dispute."   <u>Micron Technology</u>, 518 F. 3d at 904.   After this is done appropriate weight

19

can be given to the interests of the different parties in the case. It is naive and inaccurate to assume that the interests of Cisco, the manufacturer and distributor of the TelePresence product or system, and the party who may have to indemnify its customers' damages, is the same as its customers. No matter how much plaintiff focuses on Cisco's damage claims against its customers, at bottom the focus of the case is on Cisco's alleged infringement of plaintiff's patent. Plaintiff and Cisco, therefore, are unquestionably the key parties in the Cisco action. Although the convenience or inconvenience to Cisco's customers is not irrelevant, the focus of the Court's analysis should be on plaintiff and Cisco. See Honeywell Int'l Inc. v. Audiovax Commc'ns Corp., Case Nos. 04-1337 (KAJ) and 04-1338 (KAJ), 2005 WL 2465898, at *3 (D. Del. May 18, 2005)(citation omitted)(litigation against or brought by a manufacturer of an infringing product takes precedence over a suit by the patent owner against customers of the manufacturer); accord Commissariat A L'Engergie Atomique v. Dell Computer Corporation, et al., C.A. No. 03-484 (KAJ), 2004 WL 1554382, at *3 (D.Del. May 13, 2004); Ricoh, 279 F. Supp. 2d at 557 (citation omitted)(a manufacturer is presumed to have a greater interest in defending its patent against a charge of patent infringement compared to a customer). Plaintiff's claims against Cisco's customers are fundamentally claims against the ordinary users of Cisco's Telepresence product or system. Thus, the dispute between plaintiff

and Cisco will essentially resolve the validity of plaintiff's claims against Cisco's customers.  <u>Ricoh</u>, <u>supra</u>.[13]

Plaintiff argues that it is asserting direct and non-derivative claims against Cisco's customers.  Nonetheless, as discussed, plaintiff's infringement claims essentially challenge Cisco's conduct, not that of its customers.  To conclude otherwise is to vault form over substance.  Plaintiff also argues that Cisco's customers will not be bound by a judgment against Cisco in California and therefore the same issues will be litigated against the customers in Delaware.  However, this will occur only if the Court severs the action against Cisco's customers and transfers only Cisco to the Northern District of California.  The Court will not order this relief but instead will transfer the entire action to

_____

[13]At oral argument plaintiff argued that each customer's use of Cisco's components must be examined because they were using a system that is covered by one or more claims of the '526 patent. The Court declines to give determinative weight to this argument for two reasons.  First, if the argument was raised in plaintiff's briefs it was only made in general terms, and primarily in reply to Cisco's (and H-P's) opposition briefs. Issues raised for the first time in a reply brief should not be heard.  <u>See</u> <u>Laborers' Int'l Union of North Am., AFL-CIO v. Foster Wheeler Corp.</u>, 26 F.3d 375, 398 (3rd Cir. 1994) (holding an issue is waived unless a party raises it in its opening brief and "passing reference" to an issue will not suffice).  Plaintiff's briefs unquestionably focused on its different damage claims against Cisco's customers.  Defendants did not have fair notice to rebut the arguments plaintiff made at oral argument.  Second, and perhaps more importantly, even if each individual customer's use must be examined, the focus of the case is still on plaintiff's claims via-a-vis Cisco.  In practical terms, the Court's ruling on plaintiff's infringement claim against Cisco, and the ruling on Cisco's invalidity defense, is likely to resolve the issues against all of Cisco's customers.

California.

Due to the parties' significant contacts with California and minimal contacts with Delaware, California is more convenient for the parties and witnesses. Cisco is incorporated in California and has its principal place of business in the Northern District of California. Cisco also avers that its California employees are most likely to have relevant information about the accused TelePresence product or system. These employees are primarily located at Cisco's headquarters in the Northern District of California. See Stucki Declaration, ¶¶2-4, Doc. No. 15. Also, Cisco's documentation regarding the design, development and manufacture of the TelePresence product line is located primarily at Cisco's headquarters. Id. at ¶4. Cisco does not maintain any technical or business information about the TelePresence product line in Delaware. Id. All of these facts weigh in favor of transfer. See Genentech, 566 F.3d at 1345 ("in patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location").

In addition to Cisco, plaintiff and its key witnesses have significant contacts with California. The owner of the '526 patent, Margalla, as well as its two named inventors, reside in California.[14]  In addition, Acacia, the patent and licensing company

---

[14]Saqib Jang, one of the two named inventors of the '526 patent, and the principal, founder and sole shareholder of

that collaborated with Margalla to enforce Margalla's patent against Cisco and its customers, is based in Newport Beach, California. Further, discovery has revealed that plaintiff's senior officers are located in Acacia's California office, and that plaintiff's business is run out of the office.  See Cisco's Opening Brief in Support of Motion to Transfer Venue to the Northern District of California in the Alternative at 12-13, Doc. No. 39.  The fact that plaintiff has not identified a single material witness who resides in Delaware rather than California is telling and weighs in favor of transfer. See Genentech, 566 F.3d at 1345 ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer").

The ability of potential witnesses to be subject to compulsory process is also a factor that weighs heavily in the "balance of convenience" analysis. Affymetrix, 28 F. Supp. 2d at 203.  See also Genentech, 566 F.3d at 1343 ("the convenience of the witnesses is probably the single most important factor in transfer analysis")(citing Neil Bros. Ltd. v. World Wide Lines, Inc. 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  Since the two inventors of the 526 patent, Jang and Kent, reside in California, their presence

---

Margalla, resides close to Cisco's headquarters.  See Cisco Opening Brief at 14-15.  Jang testified that the other inventor, Mark Kent, is still in California.  Id. at Exhibit 11, N.T. 22:25 to 23:1.

cannot be compelled in Delaware for a trial. The same is true for Acacia and Margalla.  This weighs in favor of transferring the case to California. See Genentech, 566 F.3d at 1345 ("the fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly").  See also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511 (1947)("to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants").  The fact that representations are given at this time that Jang and Kent, and perhaps other relevant witnesses, may voluntarily appear in Delaware for trial, is not the same as them being subject to compulsory subpoena power.  Sherwood Med. Co. v. Ivac Med. Sys., Inc., No. 960305 (MMS), 1996 WL 700261, at *5 (D. Del. Nov. 25, 1996)(a witness's agreement to appear "is not the same as having them amenable to the subpoena power of the trial court"); Ricoh, 279 F. Supp. 2d at 558 n.2(an assertion by plaintiff opposing transfer that a third party with relevant information would cooperate in discovery is "suspect at best").[15]

---

[15]The subpoena power of the Northern District of California extends throughout the state of California pursuant to Rule 45 of the Federal Rules of Civil Procedure, which provides that a subpoena may be served anywhere within the state of the issuing court if a state statute allows state-wide service of a subpoena issued by a state court of general jurisdiction.  See Fed. R. Civ. P. 45(b)(2)(C). Section 1989 of the California Code of Civil Procedure authorizes state-wide service.  See Gregory Morris v. SAFECO Ins. Co., No. C. 07-2890, 2008 U.S. Dist. LEXIS 111515 (N.D. Cal. Dec. 19, 2008).

With regard to the convenience of the parties, plaintiff points out that five of the defendants are incorporated in Delaware and allegedly "have strong ties to Delaware and the surrounding area." See Plaintiff's Response Brief at 7, Doc. No. 47.  Plaintiff also argues that litigation in Delaware will collectively save defendants over 8,000 miles in travel.  Id.  Plaintiff's arguments are not persuasive.  Plaintiff has not dispelled the key fact that the essence of the case is a dispute between two California companies over patents and products developed in California, and that the key evidence and witnesses are located in California.  Plaintiff emphasizes that the "first filed case" was filed in Delaware and that plaintiff's choice of forum should not be lightly disturbed. However, plaintiff's choice of forum is only one of the factors that must be considered in the §1404(a) analysis.  Plaintiff's choice is an important but not determinative factor, especially where plaintiff and its claim have no significant nexus to Delaware. There is simply no getting around the fact that all key identified witnesses and evidence is located in California.  Plaintiff has not identified a single relevant witness located in Delaware. Nor has plaintiff identified any significant evidence outside California. In addition, plaintiff's "centralized location" argument has been rejected by the Federal Circuit.  Genentech, 566 F.3d at 1344 (the District Court improperly used the central location of the Eastern District of Texas as a relevant factor to deny transfer where no identified witness was a resident of Texas).  Although it is true

25

that the moving parties have not demonstrated that the parties'
relevant documents and evidence cannot be made available in
Delaware, it is also a fact that it is substantially more convenient
for the documents and evidence to be produced in the Northern
District of California rather than the District of Delaware.

Plaintiff argues the Court should only consider the location
of witnesses and evidence if they are unavailable or unable to be
produced in plaintiff's chosen forum.  While some cases discuss this
view, a close analysis of other cases demonstrates that in
appropriate circumstances they are not as stringent.  This is
explainable by the fact that the inquiry in the Third Circuit is
broad, and the court should examine "all relevant factors to
determine whether, on balance, the litigation would more
conveniently proceed and the interests of justice [would] be better
served by a transfer to a different forum."  Affymetrix, supra, 28
F. Supp. 2d at 196-97 (citation omitted).   In addition, the
§1404(a) analysis should use a "flexible" approach that must be
based on the "unique" facts in each case.  Stewart Org., Inc. v.
Ricoh Corp., 487 U.S. 22, 29-30 (1988); Piper Aircraft Co. v. Reyno,
454 U.S. 235, 249-50 (1981); LG Elecs. Inc. v. First Int'l Computer,
Inc., 138 F. Supp. 2d 574, 587 (D.N.J. 2001). "Section 1404 (a)
transfers are discretionary determinations made for the convenience
of the parties...." Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir.
2007); In re U.S., 273 F.3d 380, 388 (3d Cir. 2001)(citation
omitted)("[w]hile the burden is on the defendant, the defendant is

not required to show 'truly compelling circumstances for ... change.... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district'"). Cashedge, Inc. v. Yodlee, Inc., C.A. No. 06-170 (JJF), 2006 WL 2038504, at *2 (D.N.J. July 19, 2006)(granting defendants' motion to transfer on ground, inter alia, that the "Northern District of California is more convenient for the parties because the parties and potential witnesses are located in that district, the parties have proven capable to litigate there, and the court is already familiar with the parties and their technologies").

To a large extent plaintiff relies upon Magsil Corp. V. Seagate Tech., et al., No. 08-940, 2009 WL 1259043 (D.Del. April 30, 2009), where the court denied defendant's request to transfer plaintiff's patent case to California. Unlike here, however, in Magsil the court noted that "the defendants have presented no persuasive evidence that holding the trial in the Northern District of California would make it easier or less expensive." Id. at *1. In addition, the defendants "made no showing that key witnesses and/or documents would be unavailable in Delaware." Id. As noted, there is simply no assurance that the inventors of the '526 patent, and Acacia and Margalla and their key employees, will be present at trial in Delaware since they are not subject to subpoena in the District of Delaware.

Plaintiff also points to the fact that Cisco and several of its customers filed patent infringement lawsuits in Delaware, and

therefore this evidences that it is not inconvenient for the Cisco parties to litigate the case in this District.   In addition, plaintiff also argues it is inequitable for Cisco and its customers to file patent suits in Delaware and then to argue it is inconvenient to defend the case here.   The Court declines to give this argument any weight because plaintiff provided no meaningful details regarding the referenced Delaware lawsuits.   Therefore, the Court does not know if it was more convenient for the parties to litigate the referenced cases in Delaware rather than a different jurisdiction.   In addition, the Federal Circuit denied the same argument plaintiff now makes on the ground that it is "clear error" for a count to deny a transfer request based on the fact that the movant filed another patent case in the pending District.   The Court reasoned that this violates the requirement that an "individualized, case-by-case consideration of convenience and fairness" be done. Genentech, 566 F.3d at 1346 (holding that is was "clear error" for the District Court to consider this factor).   The Court agrees and will not deny Cisco's transfer request simply because in the past it filed its own patent infringement case in this District. Plaintiff also opposes transfer by citing to statistics for the median time to trial in different Districts.   These statistics are not persuasive and "appear [] to be most speculative." Id. at 1347.

   (4)  Remaining Factors

   As to the remaining Jumara factors to analyze, on the whole they also favor transfer.   The seventh factor, the enforceability

28

of a potential judgment is not a significant factor.  All parties appear to be significant companies with adequate resources to satisfy a potential judgment.   With regard to practical considerations that could make the trial easy, expeditious or inexpensive, these strongly favor transfer because key witnesses and documents are located in California and are easier to access there than in Delaware.  Further, it is not insignificant that Cisco's declaratory judgment action against plaintiff and Margalla is already pending in California.  After this case is transferred, the Court expects plaintiff's claims to proceed expeditiously.

The ninth factor to consider is the administrative difficulty in the competing fora resulting from court congestion.  The Court finds this factor neutral.  Although there is presently a backlog in Delaware, the parties are aware that these cases will be tried and managed before District and Magistrate Judges in New Jersey. The Court is confident that the case will be handled as efficiently and expeditiously in New Jersey as it will be in the Northern District of California.  Thus, administrative difficulties in handling these cases is not a factor that weighs for or against transfer.

The tenth factor to consider is whether this is a local controversy with a local interest.  If this factor is given any weight it favors the moving parties because plaintiff and Cisco are located in California.  The eleventh and twelfth factors carry no weight in the Court's analysis.  Insofar as the public policies of

Delaware and California are concerned, there is no difference that
has any significant impact on the Court's analysis.  In addition,
since this is not a diversity case the twelfth <u>Jumara</u> factor is
irrelevant.

As to the Court's ultimate decision on the transfer issue, the
thoughtful reasoning in <u>Affymetrix</u>, <u>supra</u>, is insightful:

> By definition, a transfer analysis is a thoughtful
> weighing of interests.  And, as an exercise of discretion
> the process is at least to some extent, subjective.
> Thus, while the Court can look to precedent for guidance,
> it reminds the parties that the weight which one court
> might afford to one factor on one day might very well
> differ from the weight afforded to that same factor by a
> different court, located in a different district,
> presiding over a different litigation, between different
> parties, concerning a different cause of action,
> involving different facts, different witnesses, and
> different documents on a different day.

18 F. Supp. 2d at 208. The Court has carefully analyzed and weighed
all of the relevant factors regarding defendants' transfer request.
After this is done, and for the reasons already discussed, the Court
finds that Cisco and its customers have demonstrated that it is
clearly more convenient for their case (C.A. No. 09-200) to be
litigated in the Northern District of California rather than the
District of Delaware.  There is no one decisive factor that compels
transfer.  However, a weighing of the relevant factors in the
§1404(a) analysis strongly favors the transfer of this action to the
Northern District of California.  Although plaintiff's choice of
Delaware is a weighty factor in the Court's analysis, it is not
insignificant that Delaware has no meaningful contacts with the

30

case.  Further, plaintiff and Cisco are based in California, the owner of the patent, the inventors and other key witnesses are located in California, and essentially all key infringement and invalidity documents and evidence is located in California. Accordingly, the Court will sever and stay plaintiff's claims against Enbridge and grant the defendants' motion to transfer the Cisco action to the Northern District of California.[16]

The Court recognizes that Cisco and H-P argue that the claims against their customers should be stayed and only they should be transferred to the Northern District of California.  The Court rejects this request.  The Court finds that the interests of justice and judicial economy are furthered by the complete transfer of this action to California, except as to Enbridge, rather than a piecemeal transfer.  The California court should decide the best method to manage and try this patent dispute.  That court should decide for itself how best to proceed and not be hampered by the presence of the parties' customers in a suit pending in Delaware.

### 3.   **Request to Transfer by H-P and its Customers to the Northern District of California (C.A. No. 09-632)**

Having decided that it is appropriate to transfer the Cisco action to California, the decision as to H-P's motion to transfer

---

[16]Because of its representations in the case (see n.12, supra) Enbridge should be judicially estopped from objecting to personal jurisdiction in California if it is joined in the state. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319 (3rd Cir. 2003); Vernette Walker v. The News Journal and Ann Hines, C.A. No. 06-138, 2008 U.S. Dist. LEXIS 22972 (D. Del. March 24, 2008).

is not difficult.   Since the relevant background facts and
procedural history of the H-P action is substantially similar to the
Cisco action, there is no justifiable reason to treat the Cisco and
H-P actions differently.   The analysis of the <u>Jumara</u> factors is
essentially the same for the H-P action and the Cisco action.
Indeed, all parties agree that the two cases should be treated in
<u>pari</u> <u>delicto</u>.[17]   In other words, the parties agree that it makes no
sense to litigate the Cisco and H-P actions in different
jurisdictions.   Accordingly, the motion to transfer the H-P action
to California will also be granted.   The request to stay the case
against H-P's customers and transfer only H-P to California is
denied.

---

[17]<u>See</u> Tr. at 21, 38.

**Conclusion**

      For all the foregoing reasons, the Court denies Cisco's request to stay the Cisco action until its California declaratory judgement action is concluded.  Furthermore, the Court denies the requests of Cisco and H-P to stay and sever plaintiff's customer claims and only transfer plaintiff's claims against Cisco and H-P to California.  However, except as to Enbridge, the Court grants the request of Cisco and H-P to transfer the entirety of these actions to California.  Plaintiff's claim against Enbridge will be severed and stayed and will remain in Delaware.

                                    s/ Joel Schneider
                                      JOEL SCHNEIDER
                                      United States Magistrate Judge

DATED: November 25, 2009